WILLIAM YEATON, THOMAS VOWELL, JUN., WILLIAM BRENT, AUGUSTINE NEWTON AND DAVID RECKETS, ADMINISTRATORS OF WILLIAM NEWTON, AND OTHERS, APPELLANTS V. DAVID LENOX AND OTHERS, AND ELIZABETH WATSON AND ROBERT J. TAYLOR, ADMINISTRATRIX AND ADMINISTRATOR OF JAMES WILSON, DECEASED.

The case came on afterwards for argument: Mr Swann and Mr Neale, for the appellants; and Mr Coxe, for the appellees.

Mr Chief Justice MARSHALL delivered the opinion of the Court.

The plaintiffs, with several other persons, had, previous to the year 1804, associated with each other under the name of the Marine Insurance Association of Alexandria, for the purpose of making insurances on vessels and cargoes, against sea risks. On the 26th day of June 1804, James Wilson obtained an insurance on the Governor Strong, on a voyage from Norfolk to Liverpool, to the amount of ten thousand dollars. The policy is inserted on the record. It is not a joint contract made by the association as a company, but by each for himself. Each subscribes the sum for which he becomes responsible. James Wilson had purchased the Governor Strong from Alexander Henderson & Co., and appears to have indorsed their notes in the Bank of the United States. After his death, his representatives, in September or October 1805, made a transfer of the vessel to the bank, for the security of that debt.

Some time after the vessel had sailed, intelligence was received of injury sustained by the Governor Strong, and Wilson claimed from the insurers a considerable sum on that account, informing them, at the same time, that the money belonged to the bank. Although the insurers were not satisfied of their liability, they agreed to advance their several notes, dated the 25th May 1805, to the said Wilson, payable sixty days after date at the office of discount and deposit, Washington. The

bill charges, that these notes were advanced on condition that the money should be returned to them by the bank, should it afterwards appear that they were not liable for the partial loss sustained by the Governor Strong, and that this agreement was communicated to the bank. These notes were passed to the bank, and paid by the several makers when due.

In a suit afterwards brought on the policy for the benefit of the bank, it was determined that the underwriters were not liable for the loss sustained by the Governor Strong; after which, application was made for the return of the money paid on the notes given to Wilson, which the bank refused, alleging, that the money had been paid absolutely on account of the debts due from Alexander Henderson & Co.

The charter of the bank having expired, and its affairs being committed to trustees, the makers of the several notes which have been stated, united in this suit against the trustees. As they were non residents of the district, their property was attached in the hands of the debtors of the bank, who were also made defendants.

James Davidson afterwards undertook to perform the decree of the court, and the attachment was discharged. At a subsequent term, Davidson was, by consent, made a defendant, and his answer was received as an answer for the trustees.

He says, that in January 1806 the bank received promissory notes from James Wilson, executed to the plaintiffs severally, amounting to two thousand one hundred and twenty-four dollars and four cents, to be placed, when paid, to the credit of Alexander Henderson & Co., on account of a loss by the underwriters. Should the underwriters not be liable, the notes were to be returned, if unpaid; if paid, the money was to be refunded. These notes, not being paid, were returned. He admits that the notes mentioned in the bill, were deposited on the 30th of May 1805, to go, when paid, to the credit of Alexander Henderson & Co., but has no recollection of any condition respecting their return. An amended bill was filed, in which the said Davidson was again required to answer more precisely respecting the transaction : to say, whether he was not, at the time, cashier of the office at Washington ; to state in what way the notes were deposited in bank on the 30th of May 1805; were they sent in a letter? if so, the defendant is re-

quired to produce it, or a copy of it, and the entry made on the books of the bank in relation to the said notes.

The answer of Davidson refers to his former answer respecting the notes deposited on the 30th of May 1805, and says, that he has no other information than is there given. He does not recollect in what manner the notes were transmitted, nor whether they were accompanied by any letter. "No such letter is now in his possession. No entry was made in the books of the bank in relation to said notes, except that they were to go, when paid, to the credit of Alexander Henderson & Co., to whose credit such of them as were paid were carried."

The entry on the bank books is made an exhibit, and is as stated in the answer of Davidson.

A correspondence which took place on this subject with the then president of the office of the bank at Washington, is contained in the record, and some testimony was taken by the plaintiffs. The letters and the depositions furnish strong presumptive evidence that if the bank supposed the notes to be paid absolutely on account of the debt due from Alexander Henderson & Co., the makers supposed them to be paid conditionally, and that the money was to be refunded, should they not be held responsible for the partial loss sustained by the Governor Strong.

On a hearing, the bill was dismissed with costs, and the plaintiffs appealed to this court.

Whatever might be the condition on which the plaintiffs delivered their notes to Wilson, the bank cannot be affected by it, unless it was communicated to the office. The testimony, that it was communicated, has great plausibility, but when it is recollected that the deposit of January 1806 might be confounded with that of May 1805, we are not satisfied that the testimony ought to countervail the answer of the cashier, and the entry on the books of the bank. We are, however, relieved from the difficulty of deciding on a doubtful fact, by an objection taken by the appellees to the action.

The plaintiffs who unite in this suit, claim the return of money paid by them severally on distinct promissory notes. They are several contracts, having no connexion with each other. These parties cannot, we think, join their claims in the same bill.

The appellants contend, that several creditors may unite in a suit to attach the effects of an absent debtor. We do not think so. They may file their separate claims, and be allowed payment out of the same fund, but cannot unite in the same original bill.

The decree of the circuit court is affirmed with costs.

This cause came on to be heard on the transcript of the record from the circuit court of the United States, for the district of Columbia, holden in and for the county of Alexandria, and was argued by counsel ; on consideration whereof, it is ordered and decreed by this court, that the decree of the said circuit court in this cause be, and the same is hereby affirmed with costs.