# Bestor *et al* v. Barker *et al.*

*Bill in Equity to Compel an Accounting and Settlement between Parties Occupying a Fiduciary Relation.*

1. *Fraud in sale of property; sale can be set aside, and seller compelled to account for purchaser's loss; what necessary.*—Where a person occupying a fiduciary relation with others, induces his associates into a purchase of particular property for the common benefit, concealing the fact that he is the real vendor, and misrepresents the

necessity of advantages of the purchase and the value of the property, his betrayed associates may, at their election, have the sale vacated and compel the seller to account for whatever loss they may have sustained, and surrender whatever of profit he may have obtained; but on their election to avoid the sale, there must be a restoration by his associates to the vendor, or they must compensate him for the benefits they may have derived from the transaction.

2. *Same.*—Where several parties are associated together on an equal footing in a common enterprise for a common purpose and for their mutual benefit, they occupy, so far as the purposes of the enterprise are concerned, a relation of trust and confidence binding upon each; and if one of the associates, concealing the fact of his ownership, induces the association to lease premises belonging to him by misrepresenting the value of the property and the necessity for its renting, and subsequently, by misrepresenting the true ownership, induces two of his associates to join him in purchasing the premises, and as owners the three receive the rents paid by the association, there is a breach of trust and confidence by such one of the associates entitling the other associates to avoid the transactions; but before the two associates who joined him in the purchase of the leased premises can maintain a bill to reclaim their share of the rents paid by the association, they must have both the lease and purchase set aside and annulled for the fraud and return the portions of the rent received by them as joint owners of the premises.

3 *Misjoinder of parties complainant.*—To entitle two or more parties to unite in a bill in chancery as co-complainants, there must be a community of interest between them, and all must be entitled to relief; if one or more of them is without a right to relief, the misjoinder is fatal to the whole interest, and the bill can not be maintained.

4. *Same; facts of this case.*—Five persons associated together on an equal footing in a business enterprise for a common purpose, and for mutual benefit. Two of the five, concealing the fact of their ownership of the property, induced the association to lease certain premises belonging to them, by misrepresenting the value and the necessity for the renting. Subsequently these two parties induced two of their associates, by misrepresenting the true ownership thereof, to purchase the premises, and these four, as such owners, received the rents paid by the association. On a discovery of the breach of the trust and confidence, the latter two parties, with the remaining party, filed a bill in equity against the first two to have the lease set aside and to reclaim their portion of the rents paid by the association. There was no prayer in the bill for a rescission or avoidance of the contract of purchase, and no offer to return the rents received by the two complainants after such purchase. *Held*: The breach of confidence and fraud committed sprung from the joint relation of the trust, but operated on the complainants separately and severally, giving to each a separate, distinct demand, and making it incumbent upon each, in order to support the bill, to prove a distinct wrong

done; and that there being no community of interest in the subject of the action, there was a misjoinder of parties complainant, and the bill can not be maintained.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. WILLIAM H. TAYLOE.

The bill in this case was filed by the appellants, Daniel P. Bestor, Charles L. Huger and John F. Taylor, against the appellees, James W. Lapsley, Osborne H. Parker, Oscar E. Smith and William Stringfellow, executors of the last will and testament of Duncan T. Parker, and P. D. Barker. The relief in the case is based upon the theory that the complainants and Duncan T. Parker and P. D. Barker were partners, and that Parker and Barker took advantage of this confidential relation to perpetrate a fraud upon complainants by dealing with the co-partnership secretly, and for their own benefit. The several complainants and respondents each represented cotton compresses in Mobile; and on behalf of these compresses they formed what they termed an association; and the existence of a co-partnership between them *vel non*, depends upon an agreement which was made exhibit A. to the bill, and was as follows: "The undersigned representing respectively Taylor's Press of which G. P. Macmurdo is the representative; Coley's press of which D. P. Bestor is the representative; Factor's Press of which C. L. Huger is the representative; and Shipper's Press of which Parker and Barker are the representatives; all situated in the Port of Mobile, State and county aforesaid, deeming it expedient to work together, hereby enter into the following agreement, to-wit:

"1st. The compressing of cotton shall be carried on by us under the name of the Cotton Press Association of Mobile, with a president and treasurer. 2d. This association agrees to pay for Merchant's Press and wharf $3,500 per annum and for Brown's press and warehouse $9,000 per annum and to pay Parker & Barker $1,200 per annum to prevent Planter's Press and warehouse from being used in any way for the cotton press or storage business which they herein guarantee to do, in order to prevent competition from those sources. 3d. Neither one of the presses or their representatives are required to furnish any wharf or river front; it being understood

that the wharves and river front attached to or controlled
by either one of the parties to this agreement are not
included in, but are reserved from this contract. 4th. The
net profits after paying the necessary expenses of conduct-
ing the business of the association, shall be divided every
Saturday of each week, share and share alike, between
the respective presses belonging to this association.
5th. The association may employ a collector and treas-
urer at such compensation as may be agreed upon, who
shall keep its books and collect all money due the asso-
ciation from time to time and deposit the same in one or
more responsible banks of the city of Mobile, as the
same shall be collected, and said funds may be drawn
from said bank on checks drawn by said collector and
treasurer, countersigned by the president or some desig-
nated party to these presents.  6th. Said collector and
treasurer shall have exclusive control of delivery orders
for the shipment of cotton, and he shall keep the books
and accounts of the association.  He shall also employ
such other clerks as he shall find necessary to attend to
its business.  7th. All bills shall be due and payable as
soon as the work is performed, and no person or firm in
arrears to this association on any bills shall be allowed
further credit by the association.  8th. All the presses
belonging to this association shall be allowed the same
rate and pay for compressing cotton, that is to say thirty
cents a bale for compressing cotton except cotton on
which the railroads pay the drayage, for which last
named cotton twenty-two cents a bale is to be paid ; and
excepting also 'Through Cottons' for the charges on
which the presses may compete by bidding, and the one
which takes it at the lowest figures by such bid is to
have it.  9th. Each press shall be entitled to compress
the same number of bales of cotton, and if any of said
presses or parties shall store more cotton than it is en-
titled to compress then the collector and treasurer shall
have the right to order out of such press or warehouse
under its control, a sufficient number of bales of cotton
as will equalize the number of bales to the other presses,
so the number of bales compressed and to be compressed
by such press shall be the same or as nearly so as possi-
ble.  10th. This association shall have the power, and
it shall be its duty by a vote of its members to fix a tariff
of charges from time to time, and said tariff when so

[Bestor *et al.* v. Barker *et al.*]

fixed shall be binding upon each of the parties hereto. 11th. This association shall not assume payment of wharfage on any cotton and shall have nothing to do with the storage of cotton, but any one of the presses or any member of said association may engage in the storing of cotton if it or they may so desire, subject at all times to the conditions in this contract in regard to compressing cotton. 12th. The president of this association, or the collector and treasurer herein mentioned, is authorized and it is herein made their duty to call the members of this association together to receive advice and instruction, whenever matters arise outside the provisions covered by this contract, or whenever the business of this association so requires, or when requested to do so by any member of this association. 13th. At all meetings of the members of this association for the transaction of business or the conduct of its affairs, each press shall be entitled to one vote and but one, and a majority of said votes shall be essential to a conclusion. 14th. This association shall be and remain for four years from the first day of September, 1886. 15th. This contract shall not be binding on any one of the parties of the same until it is signed by each of the cotton presses named, or the representative thereof. In witness whereof the parties hereto have signed their names, and the names of the cotton presses represented by them, on the twenty-first day of October, A. D. 1886.

[Signed.]                         PARKER & BARKER,
                          Representing 'Shipper's Press.'
                                D. P. BESTOR,
                          Representing 'Coley's Press.'
                              CHARLES L, HUGER,
                          Representing 'Factor's Press.
                               G. P. MACMURDO
                          Representing 'Taylor's Press.' ''

The bill alleges that Exhibit ''A'' to the bill was not the first and original agreement of the association; that prior to the making thereof the members of the association were bound together by an agreement in the same form as exhibit ''A,'' except that there was no stipulation therein for renting Brown's warehouse. That when this original agreement was made, the compresses that were parties thereto ·''comprised all the cotton presses

in Mobile ready and able to do all compressing business."

The bill further alleges that during the existence of the original agreement of association, or partnership, as it is styled in the bill, the defendants, Parker and Barker, furnished to one Thames the money to buy Brown's warehouse, and also an old compress; that the warehouse was purchased from John A. Campbell for ten thousand dollars for which twelve hundred and fifty dollars was paid in cash, and the balance of eight thousand, seven hundred and fifty dollars was payable with six per cent. interest per annum, in seven years, and that five thousand dollars was paid for the compress, and that Thames began to erect the compress in this warehouse, and expended about two thousand dollars in doing so. That the object in doing this was to use this property to defraud the complainants by operating through their fears of opposition to the association in the compress business, and that this was thereafter accomplished; that the scheme was that Thames was to pretend to own the warehouse, and to be about to erect a compress therein to do a compress business in opposition to the association, and that Parker and Barker would induce the association to rent the property at an enormous rent to prevent this opposition; that complainants Bestor and Huger were, at that time, absent from Mobile, and Parker telegraphed Bestor to return to Mobile to make some arrangement with Thames to stop this opposition; that Bestor communicated these telegrams to Huger, and all parties met in Mobile in August, 1886, to adjust the matter; that Parker was an intimate friend of Thames, and had for many years been the partner of Thames' deceased father, and Thames had for many years been in the employ of Parker & Barker; and in view of these facts it was arranged that Parker should negotiate for the renting of the warehouse in his own name, and then transfer the lease to the association. Parker was instructed to see upon what terms Thames could be induced to forego his determination to erect and operate an opposition or independent press. The association had no use for the warehouse and press, and did not afterwards use it, but they feared competition from it and wanted it solely for the purpose of stifling competition.

The bill further alleges that Parker reported to the association that Thames would rent his warehouse and press to the association for $9,000 a year for four years, and that he would take no less, and gave it as his opinion that the association had better accept it rather than encounter the opposition. The association knew that Thames did not have the money with which to buy the property and operate a press, and that some other person or persons were backing him, but they did not suspect that Parker & Barker were his backers ; they had great confidence in Parker's integrity and also in his sound judgment as a judicious and practical business man, and were induced through their fear of loss from competition to rent the property upon the terms stated. The trade was closed ; the lease made by Thames to Parker & Barker, and transferred to the association, and it gave its sixteen promissory notes for $2,250, one payable each succeeding three months during the term of the lease.

The bill further alleges that shortly after the transaction was closed, Parker stated that the property could be purchased for about the amount of the four year's rent coming due on it, and proposed that Bestor, Huger, Barker and himself purchase it ; this was done, Bestor and Huger each purchasing a one-third interest and Parker & Barker jointly purchasing the other third interest. For this property they gave sixteen joint notes for $1,703.12 each one payable every three months and assumed the payment or the outstanding notes due to John A. Campbell.

By the transaction last above described, the purchasers gave thirty-six thousand dollars for the property, and received with it thirty-six thousand dollars of rent notes, but in the purchase, interest had to be paid upon $8,750 until due, while the rents received did not bear interest. A calculation will show that this made the purchase price exceed the rent to be received by $1,100.78.

After the transactions heretofore recited were consummated, the association carried on its business and controlled Brown's warehouse and press during the entire term for which the association was organized. The rent notes were paid by the association, and the purchase notes were paid by the purchasers. It does not appear what became of the property.

[Bestor *et al.* v. Barker *et al.*]

The original bill prayed that the lease be set aside and annulled, and that Barker and Parker's estate be decreed to pay $9,000 to each of the complainants. The last amendment to the bill prays a settlement of the partnership affairs and that the defendants be decreed to account for the profits they derived from the transaction.

The respondents demurred to the bill assigning twenty grounds therefor. These grounds of demurrer may be summarized as follows : 1st. That the contract of the lease complained of and sought to be set aside was against public policy, it being in restraint of trade and in furtherance and a part of a combination to stifle and destroy competition, and that all of the parties are *in pari delicto* in regard thereto. 2d. The bill is in the nature of a bill to rescind a contract, and no offer is made to replace defendants *in statu quo*, nor is there any special circumstances stated excusing defendants for not doing so. 3d. That the lease sought to be rescinded has been fully performed and the subject thereof—the use of the property for a named term—has ceased to exist, and that the bill is in effect only an action for damages for a deceit. 4th. The bill fails to show any injury to complainants Bestor and Huger. 5th. That some of complainants had, at the time of the alleged fraudulent transaction, knowledge of facts sufficient to put them upon notice of the true state of facts in regard to the matter· complained of. 6th. Complainants do not come into court with clean hands. 7th Thames is a necessary party to the bill, and is not made a party thereto. 8th. The said bill shows that said lease and purchase were a part of the same transaction, or were interdependent, and seeks to have the lease alone set aside, while retaining all the advantages of said contract of purchase. 9th. The said bill shows that the said Bestor and Huger received and appropriated to their own use the larger portion of said rents, obtained under said lease, and failed to offer to refund the same. 10th. That complainants did not enter into the transaction complained of upon the faith of any misrepresentations made by defendants. 11th. Complainant's right is barred by their laches in seeking to enforce their rights to rescind.

On the submission of the cause on the demurrer, the

chancellor sustained those grounds which are numbered above as 4, 8 and 9, and declined to pass on the other grounds of demurrer.

Complainants sought to amend their bill; but the proposed amendment was not allowed, upon the ground that it did not meet the objections pointed out by the demurrers that had been ruled upon. An effort was then again made to amend the bill by simply changing the prayer so as to seek a settlement of the alleged co-partnership created by "Exhibit A" to the bill of complaint, and to require defendants to account, in such settlement, for the profits made out of the leasing of the warehouse to the partnership. This amendment was not allowed; complainants declined to amend further, and the bill was dismissed. From these decrees the complainants appeal, and assign the same as error.

G. Y. OVERALL, for appellants.—The legal proposition involved in the bill as amended is, that the transactions set forth constitute a fraud on the complainants perpetrated by Parker and Barker, and that the contract as to renting Brown's warehouse should be decreed fraudulent, and that the executors of Parker's estate and P. D. Barker be decreed to pay the complainants one-fourth each of said $36,000, with the interest thereon —Bigelow on Fraud, pp. 13, 14; Story on Partnership, §§ 174, 175; 2 Lindley on Partnership, 578.; Bigelow on Fraud, 232; *Getty v. Devlin*, 54 N. Y. 403; *Goldsmith v. Eichold Bros. & Weiss*, 94 Ala. 116.

GREGORY L. & H. T. SMITH, *contra.*—1. The bill as originally framed was a bill to rescind the contract of lease. As a general rule the court of equity will not decree a rescission of a contract where the parties can not be placed *in statu quo*. No offer is made in the bill to place the defendants *in statu quo* and this question is raised by the demurrer.—*Dent v. Long*, 90 Ala. 172; *Jones v. Anderson*, 82 Ala. 302; *Duncan v. Jeter*, 5 Ala. 605; *Clemens v. Loggins*, 1 Ala. 622.

2. The rescission of the contract of leasing sought by the bill of complaint as originally framed, was impossible. The lease had expired and the contract was terminated and had ceased to exist. There was nothing, therefore, for a rescission to operate upon, and the bill,

of necessity, could only operate as a suit for damages for a deceit, and for this there is an adequate remedy at law.

3. The rights sought by the bill of complaint to be enforced were joint rights vested in the complainants jointly, but not separately; where this is the case, if, for any reason, one of the complainants is not entitled to recover, none of them can do so.—*Dunklin v. Wilson,* 64 Ala. 162; *Jones v. Reese,* 65 Ala. 134; *Taylor v. Robinson,* 69 Ala. 269. To enable a party to assert a right of action on account of a fraud perpetrated upon him, it is not sufficient for him to show fraud. Fraud and damage must concur in order to create a right of action.—*Jordan & Sons v. Pickett,* 78 Ala. 340; *Overdeer v. Wiley,* 30 Ala. 711; *M. & M. R. Co. v. Felrath,* 67 Ala. 191.

4. In order to rescind a contract because it was obtained by misrepresentation or fraud, it must appear that the party who was misled was justified in relying, and did rely, upon the misrepresentation, and that such misrepresentation and fraud was the immediate cause of the entering into the contract.—*N. O. & Ala. C. & M. Co. v. Musgrove,* 90 Ala. 428. Knowledge of facts sufficient to put the complainants upon inquiry and which, if pursued, would have lead to the knowledge of the facts complained of, has the same effect as knowledge of the facts complained of.—*Boggs v. Price,* 64 Ala. 519; *Hodges Bros. v. Coleman,* 76 Ala. 103; *Garrett v. Lynch,* 45 Ala. 204; *N. O. & Ala. C. & M. Co. v. Musgrove,* 90 Ala. 428.

5. The right to rescind a contract may be barred by laches on the part of those seeking it.—*Garrett v. Lynch,* 45 Ala. 212; *Lockwood v. Fitts,* 90 Ala. 152; 5 Waite's Act. & Def. 515.

6. According to the allegations of the bill, Thames was a party to, and to some extent interested in, the contract now sought to be set aside and cancelled. If Parker and Barker are accountable in this suit, so is Thames; he is, therefore, a necessary party to the bill. *Prout v. Hoge,* 57 Ala. 30.

BRICKELL, C. J.—It is not of importance to the decision of the case, in any of the aspects in which it is now presented, to determine whether the agreement into which the parties entered, forming the "Cotton Press Association of Mobile," as between the parties, created

a partnership, or an enterprise to promote a common purpose and the mutual benefit of the parties, not having the essential elements and characteristics of a partnership. The bill denominates the association a partnership, and treats the relations between the parties as that of partners. But this is immaterial; the agreement is exhibited and forms part of the bill; and whether thereby a partnership was or was not created, is a question of law, dependent on the construction of the agreement, which the conclusion of the pleader can not affect or control. Where a controversy arises between the parties to an agreement, the rights of third persons not being involved, the intention of the parties, as it may be deduced from the agreement, governs.—*Pollard v. Stanton*, 7 Ala. 761; *Randle v. State*, 49 Ala. 14;. *Couch v. Woodruff*, 63 Ala. 466; *Tayloe v. Bush,* 75 Ala. 432; 1 Bates Partnership, § 17. And the intention is ascertained from the whole of the contract, from the actual relations it creates, and not from the fact that the parties denominate it a partnership, or may declare that a partnership is not intended.

Partners, in all the scope of the partnership business, in all dealings with each other as to partnership affairs or property, stand in a fiduciary relation, the one to the other, and are bound to the *uberrima fides* of such relation. The essential idea was well expressed by STONE, C. J., in *Goldsmith v. Eichold*, 94 Ala. 119 : "Each partner is, in one sense, a trustee; a trustee for the newly created entity, the partnership, and for each member of the firm, who thus becomes a beneficiary under the trust. He is more; he is a trustee, and a *cestui que trust*. A trustee, so far as his own duties bind him ; a *cestui que trust*, so far as his duties rest on his co-partners. And it is sometimes said that each partner is both a principal and an agent; a principal, to the extent he represents his own interest, but an agent so far as he represents his co-partners." The principles on which a court of equity proceeds, in passing upon transactions or dealings of persons standing in a fiduciary relation, are not applied only when some well defined legal relation may exist, but extend to all the varied relations in which confidence and. trust is reposed and accepted, and is abused or betrayed. Kerr on Fraud & Mistake, 182. . The parties associated for a common purpose, for the promotion of their mu-

tual benefit on a footing of equality. The association itself, whether they be true partners or not, so far as their purposes are concerned, necessarily includes a relation of trust and confidence reposed and accepted by its several members, binding each to the same scrupulous good faith, to which they would be bound, if standing in the relation of partners. Assuming, as must on demurrer be assumed, the truth of the allegations of the bill, Parker and Barker, unmindful of the relations they bore to their associates, and of the confidence and trust reposed in them, originated the scheme of the renting of the Brown warehouse and press from Thames, concealing the fact of their interest, misrepresenting the value of the property, and the necessity for its renting, and that Thames was a mere nominal lessor, while they were the real lessors. A breach of the trust and confidence arising from a fiduciary relation, to which the doctrine of a court of equity is applied, often occurs when there are sales to a purchaser of property from persons standing in the relation. As in the present case, the seller may induce his associates into a purchase of particular property for the common benefit, concealing the fact that he is the real vendor, misrepresenting the necessity or advantages of the purchase, or the value of the property; at the election of his betrayed associates the sale will be vacated, and the seller compelled to account for whatever loss the associates may have sustained.—*Simons v. Vulcan O. & M. Co.*, 61 Penn. St. 202, s. c. 100 Am. Dec. 628; *Pittsburg Mining Co. v. Spooner*, 74 Wis. 307, s. c. 17 Am. St. Rep. 149, and notes; *Getty v. Devlin*, 54 N. Y. 403.

But while such a transaction is voidable at the election of the parties injured, there must be a restoration, or compensation for whatever of benefits they may have derived from it. Whatever of profit the unfaithful agent or associate may have derived he is compelled to yield. It is not for him to say the property was worth all he received, and that all the advantages contemplated from its purchase have accrued. Profit from the abuse or betrayal of the confidence reposed, he is not permitted to reap. "Fraud without damage, gives no cause of action; but when these two do concur and meet together, then an action lieth," is a maxim of law, of very general application. Bestor and Huger, two of the complainants,

each received from the funds. of the association, after they and Parker and Barker, had become purchasers of the Brown warehouse and press, one-third of the rents the association had contracted to pay, and it is these rents it is the purpose of the bill to reclaim, without an offer of compensation or restoration. The purchase was voidable at their election, for it was tainted with the same breach of confidence and fraud which infected the contract of renting; but it has not been avoided, and avoidance is not within the scope or purposes of the bill. It is true, if the funds of the association had not been applied to the payment of the rents, one-fourth thereof would have been paid to Bestor and Huger, respectively. The application to the payment of the rents, was their voluntary act, and cannot change the fact that they have received more than the full share of the funds of the association, to which they were entitled. If they could now reclaim them, the fact is self-evident, that each of them would receive more than double the amount of the funds of the association which their co-plaintiff Taylor can recover. In the form of rents, they have received of the funds of the association the full share to which they were entitled. Taylor seeks a recovery of a like share, because his share of the funds were illegally diverted to the payment of the rents. If each recovers, Taylor will receive only the equivalent of that which Bestor and Huger, respectively, have received and retain, and the three recover, not jointly, but as a separate, several demand, the sum to which Taylor is entitled. As a general rule, to enable two or more to unite in a bill as plaintiffs, there must be a community of interest between them, and all must be entitled to relief; if one or more of them is without right to relief, the bill cannot be entertained.—1 Brick. Dig. 750, § 1634; 3 Brick. Dig. 373, § 88. There are exceptional cases, to which this case does not belong, in which the rule does not prevail; they are well known, and particluar reference to them is not necessary.

As the case is laid in the bill, each plaintiff has a separate, distinct demand, and to support the bill, each must prove a distinct wrong done to himself. The act of the defendants, the breach of confidence and fraud committed, sprang from the joint or associated relations of the parties, but it operates on the plaintiffs separately

and severally, working to each a separate and distinct injury, as if they were standing alone, no connection or relation having existed between them. It was of no wrong or injury to Bestor, or Huger, that Taylor's share of the funds of the association were wrongfully applied to the payment of the rents. Such application would have furnished neither a cause of action at law or in equity; and it is as true, that the wrongful application of the share of the funds to which either of them was entitled, would not have furnished Taylor a cause of action. As there is a want of a common interest, the rule which forbids the union of their several and distinct demands, is elementary.—Story Eq. Plead.. § 279; 1 Dan. Ch. Pr. (6th ed.), 303; *Yeaton v. Lenox*, 8 Peters, 123; *Chester v. Halliard*, 36 N. J. Eq. 313. As we are constrained to conclude, Bestor and Huger are without right to relief, their want of right to relief must operate to defeat the right of Taylor to relief. If a decree could be pronounced, there must be a dissociation of the plaintiffs; a decree providing relief to Taylor, and a decree denying relief to his co-plaintiffs; two decrees, essentially variant, and not in accordance with the prayer of the bill.

There are other questions of much importance and interest which have been elaborately argued, upon which it is not necessary to express an opinion. We are not now inclined to the opinion that the agreement into which the parties entered is offensive to public policy. And we are inclined to the opinion, that if Bestor and Huger be not estopped, each of the plaintiffs have a remedy by action at law for the recovery of whatever damages he may have sustained from the fraud which was practiced by Parker and Barker in the transaction of renting. These are questions, however, which are not decided, but left open for future consideration, until a necessity for their decision may arise.

We find no error in the decree of the chancellor, and it must be affirmed.