ELLEN E. MITCHELL, executrix, *vs*. EDWARD O. GRUENER & others.

Suffolk.    November 13, 1924. — January 29, 1925.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & WAIT, JJ.

*Name. Equity Jurisdiction*, To restrain use of name in business. *Partnership. Contract*, Construction.

One M, a merchant tailor who was the founder of an established business of long standing, made with three persons about to associate with one another in a partnership an agreement that the three, " or either of them shall have the right to carry on business hereafter under the name of " M " so long as " either of them " shall live and shall be engaged in carrying on said business either alone or in partnership with others; but not more than one business shall be carried on under the name of " M " at any one time." M died.   Thereafter one of the partners became dissociated with the business and subsequently the other two partners died.   *Held*, that the agreement above quoted authorized the survivor of the three to use the name of M only so long as he should live and should be engaged in carrying on the business formerly of M either alone or in a partnership.

The agreement above described did not authorize the surviving partner to use the name M if his only connection with the business formerly of M was under an agreement, nominally a partnership, with three persons other than those originally associated with him in partnership, which provided for the payment to him of a certain salary as "the sole amount of the profits" of the enterprise to which he was entitled and which was "to be deducted as an expense of the business in determining the net profits to be divided among the other partners"; gave him no authority to sign commercial paper for the concern, and provided that "all questions of policy shall be determined and all purchases of stock

shall be made by" the other three, who guaranteed to him the payment of the stipulated sums and agreed to indemnify him from all losses in connection with the business or the "present" litigation over the right to use the name of M.

To effectuate a partnership, there must be a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise, and an intention on the part of the principals to form a partnership for that purpose. Per PIERCE, J.

The survivor of the three original partners, with whom M had made the agreement as to the use of his name above described, received from the executrix of the will of M authority to use the name M under the terms under which he had been given a right to use it by the provisions of the agreement with M. *Held*, that such authority did not estop the executrix from maintaining a bill in equity under G. L. c. 110, § 4, to restrain the use of the name of M in a business carried on by persons who had associated with the survivor of the original partners under an agreement which did not constitute such survivor a partner nor amount to a carrying on of the business by him.

BILL IN EQUITY, filed in the Superior Court on June 1, 1923, by the executrix of the will of John G. Mitchell, late of Brookline, against Edward O. Gruener, Harry J. Toner, Albert J. Burton and Algernon H. Magune to enjoin them from using the name John G. Mitchell in alleged violation of G. L. c. 110, § 4, and to require them to account to the plaintiff "for all profits made or received by them or any of them in consequence of the use by them without authority of the name John G. Mitchell or in consequence of the license by any of them or any others of them to use such name, and be ordered to pay the complainant any and all such profits."

In the Superior Court, the suit was heard by *O'Connell*, J., a commissioner having been appointed under Equity Rule 35 to take the evidence. Material evidence is described in the opinion. The judge ruled in substance that the right to the use of the name John G. Mitchell given by the agreement of April 22, 1909, was "not a right which the defendant Magune could convey to others, and the agreements made with him for the payment to him of $500 a year for the use of the name gave to the defendants Gruener, Toner and Burton no rights of any legal validity as against the plaintiff"; and that the plaintiff had the right to prevent the use by the defendants of the name John G. Mitchell unless consent in writing

had been "given to the use by them of the name covering the use now being made by them of that name," and unless she was estopped by her own conduct and acts.

The following requests by the plaintiff for rulings were refused by the judge:

"The right in the use of the name John G. Mitchell given by the agreement of April 22, 1909, is confined to a continuous use of that name by the persons therein named or some of them. The agreement does not permit the defendant Magune after having terminated all connection with the business to assert or revive the right to use the name several years later, and long after the death of all the others named in the agreement."

"On the death of Wooldridge in November, 1918, Hutchins having died previously and Magune having for some time severed all connection with the business, all rights for the use of the name John G. Mitchell created by the agreement of April 22, 1909, ceased and terminated in accordance with the terms thereof and could not thereafter be revived thereunder by the defendant Magune or any of the other defendants."

"Hutchins and Wooldridge are both dead and no rights under this agreement [of April 22, 1909] now exist in any one unless as claimed by the defendants in Magune. Magune, however, retired from all connection with the business in 1912 and in 1913 all his interest in the business was sold to Wooldridge. Thereafter when Wooldridge died all rights in any one under the agreement of April 22, 1909, as to the use of the name ceased and terminated, since at that time Magune had no connection with the business and was not engaged in carrying it on either alone or in partnership with any one else."

"The agreement purporting to create a partnership, entered into between the defendants under date of Jan. 26, 1923, is at most a mere nominal paper partnership and in reality and substance creates no substantial partnership between the parties thereto and is in effect and substance merely a continuance of the previous existing arrangements in another form to pay Magune $500 a year for his agree-

ment not to interfere with the use of the name John G. Mitchell by the respondents Gruener, Toner and Burton."

By order of the judge, a final decree was entered dismissing the bill with costs. The plaintiff appealed.

*R. B. Stone,* for the plaintiff.

*W. C. Rice,* for the defendants.

PIERCE, J.   This is a bill in equity brought by the plaintiff, in her capacity as executrix of the will of John G. Mitchell, late of Brookline, deceased, to enjoin the use of the name John G. Mitchell in violation of G. L. c. 110, § 4.   The evidence taken by a commissioner is reported.   The bill was dismissed with costs and the suit is before this court on appeal.

The substantial material facts are as follows: John G. Mitchell for many years prior to the year 1909 carried on a high grade merchant tailoring business in the city of Boston under the name of John G. Mitchell pursuant to an agreement of copartnership between him and one Ferdinand Hutchins, dated January 2, 1882.   An agreement for the dissolution of the partnership and the carrying on of the tailoring business under the name of John G. Mitchell as of July 1, 1909, was executed on April 22, 1909, between John G. Mitchell, Ferdinand Hutchins, William Wooldridge and Algernon H. Magune; the last two were employees of the former firm.   The agreement made provision for the future use of the name John G. Mitchell in the terms which follow: "Said Hutchins and said Wooldridge and said Magune, or either of them, shall have the right to carry on business hereafter under the name of John G. Mitchell, so long as said Hutchins, or said Wooldridge, or said Magune, shall live and shall be engaged in carrying on said business either alone or in partnership with others; but not more than one business shall be carried on under the name of John G. Mitchell at any one time."   On July 1, 1909, a new partnership was formed between Hutchins, Wooldridge and Magune and the old business was carried on by them under the name of John G. Mitchell.   December 7, 1909, John G. Mitchell died, and thereafter, in January, 1910, the plaintiff was appointed executrix of his will.   Ferdinand Hutchins died on March

27, 1912, and Magune was appointed executor of his will. Wooldridge bought the interest of Hutchins and then owned two thirds and Magune one third interest in the business.

On June 29, 1912, a new partnership agreement was entered into between Wooldridge and Magune. This agreement contains the following provision: " If either partner shall die, or retire, the right to use the name of John G. Mitchell and carry on business under the said name shall belong to and continue in the surviving partner so far as he may be entitled to the same under the terms of an agreement between John G. Mitchell, in his lifetime and the late Ferdinand Hutchins and the parties hereto." In October, 1912, Magune suffered a nervous breakdown, withdrew from the business, entered the McLean Hospital and there remained until February 15, 1913. Meanwhile his wife had been appointed conservator of his estate, had sold all his interest in the business and all right of Magune to use the name of John G. Mitchell.

On February 17, 1913, Wooldridge entered into a partnership with the defendants Gruener, Toner and Burton to continue for five years and to succeed to the business previously carried on by Wooldridge and Magune. This agreement contained a provision in relation to the use of the said name, which reads: " In case of the death of a partner and of the purchase of his interest by the remaining partners as herein provided, the right to use the name of John G. Mitchell and to carry on said business under said name shall, so far as the deceased partner is concerned, be the property of the remaining partners."

In February, 1913, Magune was discharged from the McLean Hospital. He wanted to get back into active work and knew he could not return to the old firm under Wooldridge. He had no business occupation until March, 1914, at which time he formed a copartnership with one Chapman and that firm carried on a tailoring business of a different class than that of the firm of John G. Mitchell. November 16, 1915, Mrs. Mitchell, through sympathy and desire to restore to Magune his rights which were sold to Wooldridge, signed and gave to Magune a paper which reads: " The use

of the name of John G. Mitchell, in the Tailoring Business, was conveyed to Algernon H. Magune, Ferdinand Hutchins, and William Wooldridge, as long as either of them lived. In the event of the withdrawal of Mr. Wooldridge from the firm, or his death prior to that of Mr. Magune's I desire and authorize Mr. Magune, to at once assume all right and title in the use of the name, as given to him by John G. Mitchell, in a paper dated April Twenty-Second, 1909." Again at Magune's request, on May 16, 1916, Mrs. Mitchell signed the paper which follows: " As an expression of friendship and good will toward Mr. Algernon H. Magune of Revere, Mass., who was without his personal consent, deprived of the right conveyed to him by Mr. Mitchell, to do business under the name of John G. Mitchell, as long as Mr. Magune lived, I do hereby give and assign to Mr. Magune the sole and exclusive right to incorporate in the Tailoring Business in Boston, under the firm name of John G. Mitchell, whenever it can legally be done. I authorize Mr. Magune to take the above privilege, whenever in his judgment it becomes necessary to do so, to protect his interests in the name of John G. Mitchell." July 30, 1917, Magune retired from the firm of Chapman, and thereafter had no business occupation until some time in June, 1918.

February 16, 1918, Wooldridge retired from the partnership with the defendants Gruener, Toner and Burton, and conveyed to them his interest in the firm and its business, and covenanted that he would not object to their use of the name John G. Mitchell and would not himself use the name. February 18, 1918, Gruener, Toner and Burton entered into a new copartnership agreement pursuant to their agreement with Wooldridge, and thereafter have continued to carry on the business under the name of John G. Mitchell. The defendants were aware of the provisions of the agreement of April 22, 1909, between Mitchell, Hutchins, Wooldridge and Magune, and especially as to the terms thereof in connection with the right to use the name John G. Mitchell. By an agreement dated June 13, 1918, the defendants agreed to pay Magune $500 a year for the right to use the name John G. Mitchell, gave him the right to such use of their place

of business as should enable him to fully protect himself and the legal representatives of John G. Mitchell in the use of such name by them, and gave Magune an option to purchase a partnership interest in the business or to enter its service as an employee. February 17, 1921, the foregoing agreement as to the use of the name John G. Mitchell was continued with all the rights and privileges for a period of three years. Wooldridge died November 7, 1918.

November 23, 1922, Robert B. Stone, Esquire, wrote a letter to the defendants stating that Mrs. Mitchell had asked him to advise her as to her rights with respect to the continued use of the name John G. Mitchell " under which I understand you are doing business. According to my present information, it would seem that she has the right to prevent the continued use of that name." The respondents replied under date of November 24, 1922, " . . . We will take this up with you within a few days."

Under the agreement of June 13, 1918, Magune received $500 a year quarterly. He devoted no active time to the business; he went in and out at his pleasure and looked over the business and examined different things; he drew no salary except the $500. He sometimes came to the place of business twice a week, sometimes once a week, sometimes once in three weeks. He kept himself in touch with the business to know what was going on; he came and went as he saw fit; he drew no pay; did not consider himself under any particular obligation to do any work. He did not keep the books, did not write any letters, did no buying, did not hire anybody, did not discharge anybody, and did not take any responsible part in carrying on the business. January 6, 1923, the defendants and Magune executed an agreement which recited the existing partnership between Gruener, Toner and Burton and the agreement entered into by them with Magune dated June 13, 1918, containing "the option to purchase either an active and general partnership interest or a limited partnership interest in said business," the extension of this agreement so as to be coextensive with the term of the present partnership and the desire of Magune "to purchase an active and general partnership interest in

said business." The agreement then provided that, in consideration of the premises and of the mutual agreements therein contained, Magune was admitted to copartnership for the remainder of the term, that is, until January 17, 1924, that his interest in the profits of the business should be $500 a year, and that he should "devote to the partnership business such of his time and attention as" might "be mutually satisfactory to all parties" thereto and should not "engage either directly or indirectly in any other merchant tailoring business." May 22, 1923, the plaintiff, as executrix, notified the defendants that she objected "to the carrying on of business by" them or any of them under the name John G. Mitchell and stated that she required them to desist therefrom. She also stated: "Any right to the use of his name formerly existing has ceased, or is hereby terminated."

After the execution of the agreement of January 6, 1923, Magune went to the shop of the defendants a little more, he did not keep books of account or write any letters, or "hire anybody," or "fire anybody," or "buy any goods"; he has met customers there but did not do any business with them, or carry on any business conversation with them; he participated in the conduct of the business after January, 1923, to a greater extent in going there oftener and making suggestions in such things as he had previously done in regard to the business; he once suggested and insisted that they fix the place up, a little over a year ago, and he always had a watchful eye on the business as far as he could under the circumstances to see that the business went on in the usual way. His interest in the business was to see that it was run in a certain way and to make suggestions and that he should have the satisfaction of seeing that things went on as they used to go on; he felt what you might call a sentimental interest as well as a practical interest; he never asserted the right to direct or insist that they carry on the business in any particular way except in regard to fixing up the place; he inquired about the house from whom they bought the goods and looked over the goods and looked over the books and looked at prices, inquired about who the men were who were

working for them, and who the new men were, and the prices they were paying, and kept himself generally posted so far as he could; he thought it was necessary because he wanted to be satisfied that things were going on as they should. He thought his only power over them was in the matter of the name and his power to refuse to extend the right to use it; he did not think that he had any different power after January, 1923, from what he had before.

April 5, 1924, the defendants and Magune entered into a new agreement which in substance, so far as concerns the matter in issue, provided that their old agreement of co-partnership "came to an end by its own terms on" February 17, 1924, and that they desired to continue as copartners for a further period of six years from said date; they agreed to carry on business as partners under the name of John G. Mitchell, and that Magune should receive from the partnership business as salary and as the sole amount of the profits thereof to which he should be entitled $650 a year and should devote to the partnership business such of his time and attention as might "be mutually satisfactory to all of the parties" thereto and should not, during the term of the partnership "engage either directly or indirectly in any other merchant tailoring business." And on the same day Gruener, Toner and Burton executed and delivered to Magune the agreement which follows: " In consideration of the execution by you of the co-partnerhip agreement between us, to which this letter is annexed, we, the other partners in said partnership, do hereby guarantee to you jointly that you will receive profits from said partnership at the rate of Six Hundred and Fifty Dollars ($650.00) per annum until the expiration thereof, and we hereby agree to indemnify you and hold you harmless from all rents, debts and losses of the business, including in such debts and losses any costs or expenses incurred on account or by reason of any litigation against you or the partnership questioning your right or the right of the partnership to use the name of John G. Mitchell, in proportion among us to our respective shares in the net profits of the business."

Assuming that the executrix of the will of John G. Mitchell

as such had authority to authorize the use of the name John G. Mitchell, that no consideration was required to give validity to such an act, and that within its terms the gift was not revocable, we turn to the letters of Mrs. Mitchell dated November 16, 1915, and May 16, 1916, to ascertain therefrom the measure and the quantity of the right transferred from her to Magune. The paper of November 16, 1915, above quoted, in substance authorized the use of the name John G. Mitchell upon the terms that Magune had the right to use it under the paper, above quoted, signed by John G. Mitchell, April 22, 1909. That instrument, all parties thereto other than Magune being dead, paraphrased, authorized Magune to use the name John G. Mitchell so long as he (Magune) " shall live and shall be engaged in carrying on said business [i. e. the business of John G. Mitchell] either alone or in partnership with others." Magune, alone, has never at any place carried on a tailoring business resembling the business which John G. Mitchell with his partners conducted before Mitchell retired from the firm of John G. Mitchell.

There remains for decision the question, Is Magune engaged in carrying on said business in partnership with the defendants Gruener, Toner and Burton? The agreement which is denominated a partnership, executed April 5, 1924, provides that Magune "shall receive . . . as salary . . . and as the sole amount of the profits thereof to which he may be entitled, the sum of Six Hundred Fifty Dollars ($650) per annum payable in equal quarterly payments and no more, to be deducted as an expense of the business in determining the net profits to be divided among the other partners." The agreement further provides that "All checks, notes and other writings pledging the credit or affecting the property of the partnership shall be signed by either the party of the first part or the party of the second part. All questions of policy shall be determined and all purchases of stock shall be made by the parties of the first, second and third parts "; that is, by Gruener, Toner and Burton. The agreement of April 5, above quoted, further provides a guarantee of the payment of the $650 and an indemnification from all losses

in connection with the business or the present litigation over the right to use the name of John G. Mitchell.

Under the association agreement and the agreement of indemnity Magune has no word in the final determination of the policy or in the management of the firm business; he has no interest as an owner in the property of the firm; he has no right to share in its profits; he is not liable to make contribution; he could not have an accounting in equity; he is indemnified against all losses and obligations. His real and only concern being that the firm and the members of the firm shall remain sufficiently solvent to pay the fixed annual sum of $650, for his nominal association as a partner, with the active, controlling members of the partnership firm. A partnership is an association of two or more persons to carry on as coöwners a business for profit. St. 1922, c. 486. *Meehan* v. *Valentine,* 145 U. S. 611, 623. There must be a voluntary contract of association for the purpose of sharing the profits and losses, as such, which may arise from the use of capital, labor or skill in a common enterprise, and an intention on the part of the principals to form a partnership for that purpose. *Bacon* v. *Christian,* 184 Ind. 517, 521. *In re Marcuse & Co.* 281 Fed. Rep. 928, 939. *Dwinel* v. *Stone,* 30 Maine, 384. *Westcott* v. *Gilman,* 170 Cal. 562, 568, *Thompson* v. *Holden,* 117 Mo. 118, 128. *McDonald* v. *Matney,* 82 Mo. 358. *Bestor* v. *Barker,* 106 Ala. 240. *De-Rees* v. *Costaguta,* 275 Fed. Rep. 172. *McMurtrie* v. *Guiler,* 183 Mass. 451, 453. *Rosenblum* v. *Springfield Produce Brokerage Co.* 243 Mass. 111, 115. As between Magune and the other partners, the agreement created no such community of interest in the whole property and business as is the essence of a partnership agreement under the decisions above referred to; and as against the rights of the plaintiff it created a partnership in name only.

It results that the decree must be reversed with costs.

*Decree accordingly.*