**In re Amnon INBAR, Stephen Carp and Joan Carp, Alleged Debtors.**

**Bankruptcy No. 90–12022–JNG.**

United States Bankruptcy Court, D. Massachusetts.

Nov. 9, 1990.

Richard W. Gannett, Newton, Mass., for alleged debtors.

Stephen E. Shamban, Braintree, Mass., for petitioner.

### MEMORANDUM

JAMES N. GABRIEL, Chief Judge.

### INTRODUCTION

On April 23, 1990, Amnon Inbar ("Inbar") filed an involuntary partner's petition against the above-named individuals. In his petition, Inbar alleged that he is a gen-

eral partner of a partnership whose other general partners are Stephen and Joan Carp.

In response to the involuntary petition, the Carps filed a motion to dismiss. The Carps assert that a partnership does not exist and that the alleged debts of the partnership are really debts of Inbar individually or of Inbar Enterprises, Inc. Notably, Amnon Inbar and Inbar Enterprises, Inc. are both the subject of pending Chapter 11 proceedings before this Court.

In their motion to dismiss, the Carps state:

[t]he entity that Stephen [Carp] and Inbar formed as a vehicle to do their business is a Massachusetts corporation known as Carp/Inbar, Inc., the only vehicle in which Stephen and Inbar pooled their efforts. Joan [Carp] and Inbar, as tenants in common, owned real property at 166 Pond Brook Road, 172 Pond Brook Road and 36 West Blvd. Newton, Massachusetts, which Carp/Inbar, Inc. developed.

### FACTS

The Court conducted an evidentiary hearing with respect to the motion to dismiss on October 3, 1990. Stephen Carp was one of five witnesses that testified. Fourteen exhibits were admitted into evidence. The issue to be decided now is whether the alleged Debtor is, in fact, a partnership.

On direct examination Stephen Carp testified that he was primarily involved in small business management and accounting. He stated that he conducted business through a corporation known as Business Boston, Inc. Carp testified that the entity alleged to be the Debtor in this proceeding did not file taxes, did not have a tax identification number, did not receive tax bills, did not own land, and did not have a business name. He denied the existence of either a written or oral partnership agreement and stated unequivocally that he never intended to become a partner with Inbar.

On cross-examination, Stephen Carp described his involvement in the real estate development business and his initial contacts with Inbar. Specifically, Carp indi-cated that he and Inbar investigated various properties in Newton for their development or rehabilitation potential.

Carp and Inbar formed a corporation known as Carp/Inbar, Inc. The Articles of Organization for that corporation reveal that it was formed in November of 1988. The Articles also reveal that the corporate address was the same as that of Business Boston, Inc. The purpose of the corporation was to "engage in the business of real estate construction and development and all activities related thereto. . . ." The Articles contain a section captioned "provisions as to intercompany dealings," which authorizes Carp/Inbar, Inc. to enter into contracts and transact business with its directors, officers or shareholders. The section also provides that, in the absence of fraud,

no such contract or transaction shall be invalidated or in any way affected by the fact that such directors, officers or stockholders of the corporation have or may have interests adverse to the interest of the corporation, even though the vote or action of directors, officers or stockholders having such adverse interests may have been necessary to obligate the corporation upon such contract or transaction.

Carp testified that he was not in possession of stock certificates for Carp/Inbar, Inc. He was unable to recall whether shares were ever issued. Nevertheless, Carp testified that he and Inbar were the only shareholders of Carp/Inbar, Inc. and that each held a 50 percent interest in the corporation.

Carp discussed the acquisition of several parcels of real estate. With respect to the property located on West Boulevard, contrary to the assertion in the motion to dismiss, he and Inbar took title to the property on September 17, 1988 as tenants in common. Carp and Inbar refinanced the property in the spring of 1989. They signed a $546,000 mortgage in their individual capacities on April 27, 1989. With respect to the property on Pond Brook Road in Newton, Inbar and Joan Carp took title

as tenants in common. On July 1, 1988, Inbar and the Carps obtained an acquisition and construction loan from Grove Bank for Savings. They signed a promissory note to the bank and "jointly and severally" promised to pay the bank $600,000. However, only Inbar and Joan Carp executed the mortgage on that property in favor of Grove Bank for Savings in the amount of $600,000. Carp was unable to testify coherently about the amount and source of the deposit. At one point he stated no money was put down on the property. At another point, he said his wife advanced the money. He was also unable to recollect the name on the account or accounts that were used for depositing loan proceeds, although he said that he and Inbar were both signatories.

Mr. Carp testified that he expected that the properties on West Boulevard and Pond Brook Road would be developed and sold for a profit. Although he indicated that there was no agreement as to how the profit would be divided, he stated that he expected the corporation to be paid first with the balance of the funds being split by the owners on a 50/50 basis. He explained that Joan Carp was not involved in the day to day business activities undertaken by Carp and Inbar and became a part owner of property with Inbar for investment and estate planning purposes. Nevertheless, when purchase and sale agreements were signed for the two Pond Brook Road properties, neither Joan Carp nor Inbar received the deposits. Rather, Carp/Inbar, Inc., Inbar Enterprises, Inc. and Business Boston, Inc. received the funds. Specifically, the $44,000 deposit for 166 Pond Brook Road was split between Inbar Enterprises, Inc. and Business Boston, Inc. because, according to Carp, those two entities had advanced monies for the project.

Lastly, Carp admitted to providing accounting services for Inbar through Business Boston, Inc. until May of 1989. In this regard, a financial statement for Inbar dated January 1, 1989 contains a note relative to Inbar's equity in real estate. With respect to the three properties in question, the financial statement provides:

| | Market Value | % Complete | Outstanding Mortgage Value | Equity In Real Estate | Ownership | Selling Price | Projected Passing Date |
|---|---|---|---|---|---|---|---|
| 50% Partnership Real Estate: | | | | | | | |
| 36 W. Blvd. Newton, MA | $350,000 | 5% | $270,000 | $80,000 | 50% | $700,000 | 8/89 |
| 166 Pond Brook Rd. Newton, MA | $250,000 | 5% | 170,000 | 80,000 | 50% | 459,000 | 5/89 |
| 172 Pond Brook Rd. Newton, MA | $250,000 | 5% | 170,000 | 80,000 | 50% | 559,000 | Unsold |
| Deposit–River Street Newton, MA | 1,000 | | | 1,000 | 45% | N/A | N/A |
| Total | 851,000 | | 610,000 | 241,000 | | | |
| Total at 50% Owned | 425,500 | | 305,000 | 120,500 | | | |
| Total Real Estate | $3,550,500 | | $2,401,000 | 1,849,500 | | | |
| Deposits Taken to Date | | | | 117,500 | | | |
| Total Equity in Real Estate | | | | $1,032,000 | | | |

The remaining witnesses were representatives of creditors with claims relating to the Newton properties. They represented that they were unfamiliar with the alleged partnership. For example, the lending officer at Grove Bank for Savings indicated that the Bank never received a financial statement from a partnership and does not claim to be owed money by a partnership.

## DISCUSSION

Section 6(1) of the Uniform Partnership Act (the "UPA") adopted in Massachusetts defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit." Mass.Gen.Law Ann. ch. 108A, § 6(1) (West 1990). Section 7 of the Act prescribes rules for determining the existence of a partnership. It provides in relevant part:

In determining whether a partnership exists, these rules shall apply:

(1) Except as provided by section sixteen persons who are not partners as to each other are not partners as to third persons.

(2) Joint tenancy, tenancy in common, tenancy by the entireties, joint property, common property, or part ownership does not of itself establish a partnership, whether such co-owners do or do not share any profits made by the use of the property.

(3) The sharing of gross returns does not of itself establish a partnership, whether or not the persons sharing them have a joint or common right or interest in any property from which the returns are derived.

(4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:

(a) Of a debt by instalments or otherwise,

(b) As wages of an employee or rent to a landlord,

(c) As an annuity to a widow or representative of a deceased partner,

(d) As interest on a loan, though the amount of payment vary with the profits of the business,

(e) As the consideration for the sale of the good will of a business or other property by instalments or otherwise.

*Id.* at § 7.

In a recent case from this district, the court elaborated upon the UPA's requirements stating:

the statute's requirement that the association be one to 'carry on ... a business,' ... has been interpreted to require an intent to conduct a business over a substantial period of time, rather than joining together as joint venturers in a simple, limited investment. *See Shinberg v. Garfinkle,* 361 Mass. 109, 278 N.E.2d 738 (1972); *Shain Inv. Co. v. Cohen,* 15 Mass.App.Ct. 4, 443 N.E.2d 126 (1982).

\*     \*     \*     \*     \*     \*

It is true that the intention to form a partnership is often referred to as an element of partnership existence. *See, e.g., Commissioner v. Culbertson,* 337 U.S. 733, 741–42, 69 S.Ct. 1210, 1213–14, 93 L.Ed. 1659 (1949); *Mitchell v. Gruener,* 251 Mass. 113, 123, 146 N.E. 252, 255 (1925); *Kravitz v. Pressman, Frohlich & Frost,* 447 F.Supp. 203, 210 (D.Mass. 1978).... The only necessary intention, however, is an intent to do those things which constitute a partnership. The law fixes the legal consequences which flow from the conduct of the parties. *E.g., Gunnison v. Langley,* 85 Mass. 337 (3 Allen) (1862); *West v. Kerr–McGee Corp.,* 586 F.Supp. 493 (E.D.La.1984), *rev'd on other grounds,* 765 F.2d 526 (5th Cir.1985); 1 R. Rowley, *Rowley on Partnership,* § 7.6 (2d ed. 1960). The converse is also true. Parties cannot establish a partnership through mere intention and reference to themselves as partners. *E.g., Martin v. Stone,* 332 Mass. at 540, 126 N.E.2d at 196 (1955).

*In re Medallion Realty Trust,* 103 B.R. 8, 12–13 (Bankr.D.Mass.1989).

In the instant case, there is compelling evidence that a partnership does not exist between Amnon Inbar and the Carps. Except for the financial statement prepared

by Stephen Carp showing Inbar with a 50 per cent partnership interest in a real estate, the remaining evidence either weighs against the existence of a partnership (Carp's direct testimony, in particular) or is entirely equivocal. The record is devoid of any evidence that the parties actually intended to do business as a partnership. Carp denied any such intent, and Inbar did not testify. If anything, the parties may have joined forces as joint venturers to acquire and develop the Newton properties.

Moreover, the parties equipped themselves with several corporate vehicles for conducting business, and a provision in the Articles of Carp/Inbar, Inc. expressly sanctions dealings among the directors and their corporate entities that in the absence of such a provision would be highly suspect. Thus, in the Court's view, the existence of Carp/Inbar, Inc. with its broad corporate purposes militates against the need for and existence of a separate partnership.

The Court also lacks evidence relative to how partnership profits and losses were to be shared. Although Stephen Carp referred to splitting profits on a 50/50 basis such testimony was not inconsistent with the ownership of Carp/Inbar, Inc. or the form of ownership of the alleged partnership properties. As is clear from section 7 of the UPA, the ownership of property as tenants in common does not in itself establish a partnership.

The Court is also mindful of the absence of testimony relative to the control and management of partnership affairs. Although it is clear that Mrs. Carp did not play a role in the day to day affairs of the alleged partnership, there was no specific evidence as to how the business activities of the alleged partnership were organized and directed. Although the Court must infer that, if a partnership existed, Carp kept the books for the enterprise, there was in fact no evidence of what if any business records and bank accounts were kept by the alleged partnership, as opposed to the corporate entities. Consequently, there was no testimony or documentary evidence relative to contributions to the partnership by the alleged partners or disbursements made by the alleged partnership.

The Court is unable to conclude by a preponderance of the evidence that a partnership among Inbar and Stephen and Joan Carp existed. Accordingly, the Court hereby allows the motion to dismiss.