RICHARD M. PENTA vs. CONCORD AUTO AUCTION, INC.,
& others.[1]

Middlesex. May 19, 1987. — August 21, 1987.

Present: DREBEN, SMITH, & WARNER, JJ.

Contract, Sale of real estate. Sale, Of stock. Trust, Real estate trust, Trus-
tee's authority. Agency, Scope of authority or employment. Practice,
Civil, Summary judgment.

In a civil action in which the plaintiff buyer sought specific performance
of an agreement to sell certain real estate owned by a trust, summary
judgment in favor of the buyer was improperly ordered where the defend-
ants raised a genuine issue of material fact with respect to the buyer's
knowledge at the time of the execution of the agreement that the trustee
lacked authority to sell the property. [638-641]
There was no merit to the argument of a seller opposing a claim for specific
performance of an agreement to sell real estate that, even though the
seller had announced it would not fulfil its obligations under the agree-
ment, the buyer was then still obligated to procure financing acceptable
to the seller before seeking to enforce the agreement. [641-642]
There was no merit to a seller's argument that an agreement for sale of
stock and land was indefinite and incomplete where the agreement con-
tained the essential elements of an enforceable contract. [642-643]

CIVIL ACTION commenced in the Superior Court Department
on January 7, 1987.

The case was heard by Andrew Gill Meyer, J., on a motion
for partial summary judgment.

Carl K. King (Gayle M. Merling with him) for the defend-
ants.

Jonathan M. Albano (Joseph L. Kociubes with him) for the
plaintiff.

WARNER, J. The defendants appeal from a partial summary
judgment, entered pursuant to Mass.R.Civ.P. 54(b), 365 Mass.

[1] E.L. Cox Associates, Inc., and Betsy Cox Powell, individually and as
trustee of the Cox Family Trust.

821 (1974), directing the specific performance of an agreement to sell certain real estate and the stock of two closely held corporations.

From the materials before the judge on the plaintiff's motion for partial summary judgment, we learn the following. A business known as the Concord Auto Auction (auto auction) facilitates the purchase and sale of used motor vehicles by licensed dealers. The auto auction is run by two operating companies, the defendants Concord Auto Auction, Inc. (Concord), and E.L. Cox Associates, Inc. (E.L. Cox). All of the stock in those companies is owned in equal shares by the defendant Betsy Cox Powell (Powell) and her sister, Nancy Thomas (Thomas). Portions of the land on which the auto auction is conducted are owned by three separate entities: (1) Concord, (2) the Cox Family Trust (trust), a so-called nominee trust, and (3) ENYA Corporation (not further described), which owns the parcel known and hereafter referred to as the Salvucci property. Powell is the president and treasurer of Concord and E.L. Cox and the sole trustee of the trust. The beneficiaries of the trust are Powell, Thomas and the estate of their brother, E.L. Cox.[2]

In late 1986, the plaintiff, who was then general manager of the auto auction, began negotiations with Powell and, principally, one John J. Whyte, a certified public accountant and executive vice-president of Concord. Those negotiations culminated in a written offer (in a form first prepared by Whyte and later modified by the plaintiff and Whyte — this offer is hereafter sometimes referred to as the agreement) by the plaintiff to purchase the various interests involved in the auto auction. The offer was made by the plaintiff and accepted by Powell on November 22, 1986. Powell signed in her capacities as president of Concord and E.L. Cox and as trustee of the trust. No one else signed the offer.

The agreement, fairly detailed in terms, called for a gross purchase price for the various interests of $12,250,000, and allocated payments as follows: for the real estate owned by

---

[2] Thomas, ENYA Corporation and the estate are not parties to the litigation.

the trust, $2,200,000; for the stock of Concord and E.L. Cox, $9,400,000[3]; and for the Salvucci property, $650,000. The agreement also provided that Powell and Thomas would not for five years enter into any business relationship with an existing or new auto auction in New England, New York or New Jersey; for that agreement the plaintiff would pay an additional $5000 per month during the five-year period. The plaintiff would change the name of E.L. Cox and would never use the name Cox in any business or legal context. The agreement went on to provide the usual with respect to good title and so forth to the stock and the real estate.

The obligation to transfer the interests involved to the plaintiff was subject to (1) the plaintiff's financing arrangements being acceptable to Concord, E.L. Cox and the trust, and (2) those entities not having to expend more than $25,000 to comply with the obligations imposed on them by the terms of the agreement. Pending the anticipated closing date (December 31, 1986), Concord, E.L. Cox and the trust were to carry on business as usual but were not to declare or pay dividends or bonuses, except that E.L. Cox could distribute certain earnings.

By letter of December 26, 1986, counsel for the trust announced to the plaintiff that the trust was "unable to convey good title to its property" because the administrator of the estate of E.L. Cox had demanded payment of $3,000,000 for the estate's one-third share as beneficiary of the trust (the total price allocated for the trust's land was $2,200,000). Consequently, said counsel, the provision of the offer with respect to the expenditure of more than $25,000 to comply with obligations to deliver title was being invoked, and the deal was off. A counter offer was made, however. Powell and Thomas were prepared to transfer their stock and their two-thirds interest

---

[3] In accordance with the terms of the offer, the plaintiff paid a deposit of $25,000 to Powell in her capacities as president of Concord and E.L. Cox. That deposit was to be credited to the payment for the stock of the corporations. The balance of the payment was to be by $8,375,000 in cash or certified funds and by a $1,000,000, nine percent, five-year direct reduction note. Monthly principal and interest payments on the note were to begin six months after the closing (interest only payable to that time).

in the trust real estate and the owner of the Salvucci property was prepared to convey at a total price reduced by $733,333.33; the plaintiff's financing would still be subject to approval. The proposition was not acceptable to the plaintiff, and subsequent negotiations in attempt to salvage the transactions failed.

Partial summary judgment entered ordering Powell, upon the performance by the plaintiff of his obligations under the agreement, (1) to convey the trust real estate, (2) to cause the conveyance of the Salvucci property, and (3) to cause the delivery of the stock of Concord and E.L. Cox.[4]

In opposing the motion for partial summary judgment, the defendants (with good reason) did not rely on the claim of the inability of the trust to give good title to its real estate because of the demand of the estate of E.L. Cox. Rather, before the motion judge and in this court, the defendants have argued that there are genuine issues of material fact as to whether Powell had authority to bind the trust in accepting the plaintiff's offer to purchase. They further contend that the agreement is not enforceable because (1) the plaintiff did not satisfy the condition that the defendants approve his financing arrangements, and (2) the agreement is too indefinite and incomplete. On these two bases, the defendants say, summary judgment should have been entered for them.[5]

1. There is no question that the materials before the judge show a genuine issue of fact as to whether the plaintiff had been told by Powell and Whyte, prior to and at the time of

---

[4] The judgment was later amended so as to provide (reflecting the plaintiff's agreement) that, pending resolution of any appeal, the plaintiff would not transfer or encumber any of the property transferred under the judgment other than to secure financing for the purchase. The judgment as amended was stayed by a single justice of this court pending appeal.

[5] In the circumstances, the defendants were not precluded by initial explicit reliance on one ground of avoidance of the agreement from asserting other grounds in defense to the plaintiff's action in the Superior Court. See *New England Structures, Inc.* v. *Loranger*, 354 Mass. 62, 66 and n.4 (1968); 3A Corbin, Contracts § 762 at 524-526 (1960). In the last paragraph of the letter of December 26, 1986, to the plaintiff from counsel for the trust, it was stated that all rights to contest the validity of the offer to purchase as a contract were reserved.

the execution of the offer to purchase, that Powell, as trustee, did not have the necessary assent of the estate of E.L. Cox to the sale of the trust real estate; the controversy is whether the issue is material to the litigation. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974).

The trust contained provisions typically found in nominee trusts, a form of ownership of real estate which is in considerable use in Massachusetts as a title-holding device. See *Plunkett* v. *First Fed. Sav. & Loan Assn.*, 18 Mass. App. Ct. 294, 306-307 (1984); Birnbaum & Monahan, The Nominee Trust in Massachusetts Real Estate Practice, 60 Mass.L.Q. 364, 364-365 (1976); Forms and Tax Consequences of Real Estate Ownership 246-247 (MCLE 1986); Park & Park Real Estate Law § 174 (2d ed. 1981).[6] The provisions which affect this case are found in articles Third and Fourth of the trust instrument. Article Third provides, in pertinent part: "The Trustees shall act at all times . . . solely as directed in writing by all of the beneficiaries." Article Fourth includes a provision that: "Notwithstanding the provisions of Article Third, every agreement . . . executed by a person appearing from the records in the said Registry [of deeds for the southern district of the county of Middlesex] to be a Trustee hereunder shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the execution . . . the Trustee executing . . . such instrument was duly authorized, empowered and directed by the beneficiaries to execute . . . the same and that such instrument is valid, binding, effective and legally enforceable." There is no argument as to the validity of the trust or the record status of Powell as sole trustee. The plaintiff, who knew Powell was a trustee but did not see or know of the provisions of the trust (nor did his counsel) before signing the offer to purchase, acknowledges the need for beneficiary assent (as between the beneficiaries and the trustee) to the sale but contends that article Fourth controls and conclu-

---

[6] For discussion of the perceived advantages and disadvantages of the nominee trust, see Birnbaum & Monahan, *supra* at 365 et seq.; Forms and Tax Consequences of Real Estate Ownership, *supra* at 247-256. Cf. *Druker* v. *State Tax Commn.*, 374 Mass. 198 (1978).

sively establishes Powell's authority as to him without regard to his knowledge as to Powell's actual authority. The defendants argue, on principles of agency, that the plaintiff's knowledge as to Powell's lack of authority is material to and dispositive of the question of the enforceability of the agreement.

The defendants contend that, as the trust provides for control of the trust property by the beneficiaries, the trust is not a trust at all but rather it establishes a principal-agent relationship. See Birnbaum & Monahan, *supra*, at 366-368; Restatement (Second) of Agency § 14(B) (1958) ("One who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency."); Restatement (Second) of Trusts § 8 comments b and h (1959) (same); 1 Scott, Trusts § 8, at 95 (4th ed. 1987) (Where a person is both agent and trustee for another, "the agency relation . . . predominates"). We need not decide whether Powell should be characterized as a trustee or agent or whether some hybrid relationship was created by the trust, as the result we reach would be the same in any case.

Under the rules of agency, the plaintiff would be precluded from enforcing the agreement if he knew at the time of its execution that Powell lacked the authority to bind the estate of E.L. Cox. "A person with notice of a limitation of an agent's authority cannot subject the principal to liability upon a transaction with the agent if he should know that the agent is acting improperly." Restatement (Second) of Agency § 166. See *Cauman* v. *American Credit Indem. Co.*, 229 Mass. 278, 283 (1918) ("If one has notice that the authority of an agent is limited, he deals with the agent at his peril"); *McCarthy* v. *Parker*, 243 Mass. 465, 468 (1923); *Eastern Renovating Corp.* v. *Forhan*, 391 F. Supp. 204, 205 (D. Mass. 1975). The extent of an agent's authority is, of course, a question of fact. See *Costonis* v. *Medford Housing Authy.*, 343 Mass. 108, 113 (1961). Likewise, if the trust constitutes a true trust, the plaintiff cannot enforce the agreement in the face of actual knowledge of Powell's lack of authority. See *Jones* v. *Jones*, 297 Mass. 198, 211 (1937); *Tierney* v. *Coolidge*, 308 Mass. 255, 259

(1941); *Newhall* v. *Second Church & Soc.*, 349 Mass. 493, 500-501 (1965). See and compare Restatement (Second) of Trusts §§ 272, 284, 291, 297 and 310; 4 Scott, Trusts §§ 296-297.5, and authorities there cited, and § 310 (3d ed. 1967). The language of article Fourth does not avail the plaintiff in the circumstances which the defendants seek to prove. We hold only that the provision with respect to conclusive evidence of the authority of the trustees of the trust relieved the plaintiff of the *duty to inquire* as to Powell's actual authority to sign the offer to purchase on behalf of the trust. See Scott *supra*; Park & Park, Real Estate Law § 1017 (Title standard of the Massachusetts Conveyancers' Association provides in part: "A transferee from the trustees of record of a non-testamentary trust *need not inquire* into whether (a) said trustees have authority to transfer . . ., provided that (1) the recorded declaration of trust recites that third parties may rely without inquiry on the acts of said trustees . . ." [emphasis supplied]). Compare G. L. c. 184, § 34. As there is a genuine issue of fact with respect to the plaintiff's knowledge at the time of the execution of the agreement, the order for partial summary judgment was inappropriate.

2. The defendants argue that the plaintiff's failure to secure approval by the defendants of the plaintiff's financing arrangements precludes enforcement of the agreement. It is enough to say that, once the defendants had informed the plaintiff that they would not fulfil their obligations under the agreement, the plaintiff was "not obliged to go through the empty ceremony of [attempting to procure financing acceptable to the defendants] in order to put the defendant[s] in default." *Schilling* v. *Levin*, 328 Mass. 2, 5 (1951). See *Trustees of the Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.*, 367 Mass. 57, 61-62 n.2 (1975). If, after trial, the agreement is found to be enforceable, any judgment should require (as did the partial summary judgment) that the plaintiff perform his obligations under the agreement.

3. The defendants also contend that they are entitled to the entry of summary judgment because the agreement is too indefinite and incomplete to be enforced. First, the defendants say,

the stock of Concord and E.L. Cox is owned by Powell and Thomas; Powell did not sign the agreement in her individual capacity and Thomas did not sign at all. In addition, the owner of the Salvucci property is not a signatory to the agreement. The three sentence argument in these respects in the defendants' brief does not rise to the level of appellate argument, and we do not consider it. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958).[7]

We consider briefly other arguments made by the defendants with respect to indefiniteness and incompleteness of the agreement. There are no fatal deficiencies in the description of the terms and conditions of the $1,000,000 note to be given by the plaintiff toward the purchase of the stock. It will be remembered that the plaintiff's financing arrangements must be approved by the defendants. The provisions with respect to future competition and the use of names are "sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained." *Simons* v. *American Dry Ginger Ale Co.*, 335 Mass. 521, 523 (1957). See *Cataldo* v. *Zuckerman*, 20 Mass. App. Ct. 731, 737 (1985); *Finn* v. *McNeil*, 23 Mass. App. Ct. 367, 372 (1987). The agreement contains the essential elements of an enforceable contract for the sale of stock and

---

[7] The record includes a general durable power of attorney from Thomas to Powell (expressly covering the sale of Thomas's stock and her interest in the trust real estate) and consents by Thomas to the sale of her stock in Concord and E.L. Cox, all executed twenty days after the date of the agreement. The letter of December 26, 1986, from counsel for the trust to the plaintiff, in stating the counter offer, represented that Powell and Thomas were then prepared to transfer their stock in the corporations and the owner of the Salvucci property was then prepared to convey. At no time does it appear that Thomas or the owner of the Salvucci property has questioned Powell's authority to bind them. That issue, if it becomes one at trial, involves questions of fact.

of land. See *Nigro* v. *Conti*, 319 Mass. 480, 482 (1946); *A.B.C. Auto Parts, Inc.* v. *Moran*, 359 Mass. 327, 329 (1971).[8]

*Judgment reversed.*[9]

---

[8] In view of our disposition, we do not reach other issues argued by the plaintiff and the defendants, for example, whether the agreement is divisible, see *Barlow Mfg. Co.* v. *Stone*, 200 Mass. 158, 160 (1908); *Potter & McArthur, Inc.* v. *Boston*, 15 Mass. App. Ct. 454, 455-456 and n.2 (1983), a question which may or may not become significant at trial.

[9] Before any trial, it would seem desirable to join as parties all those who have any interest in the transactions. See Mass.R.Civ.P. 19(a), 365 Mass. 765 (1974).