### In re MEDALLION REALTY TRUST Debtor.

**Bankruptcy No. 89–40203–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

July 11, 1989.

Jeffrey L. Jonas, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for First Service Bank for Sav.

Louis S. Robin, Hendel, Collins & Newton, Springfield, Mass., for Medallion Realty Trust/debtor.

## OPINION

JAMES F. QUEENAN, Jr.,
Bankruptcy Judge.

First Service Bank for Savings (the "Bank"), through Federal Deposit Insurance Corporation as its receiver, moves to dismiss this Chapter 11 case on the ground that Medallion Realty Trust (the "Debtor") is not a "business trust" eligible for relief under Chapter 11. For the reasons set forth below, the motion is denied. But it is a Pyrrhic victory for the Debtor, because I hold that the Debtor is a partnership, with all the consequences that flow therefrom.

### I. FACTS

The facts are undisputed. The instrument creating the Debtor is a "nominee" trust, a form of trust which has become a popular vehicle for real estate investment in order to obtain income tax deductions for investors and simplicity of documentation in sales and financing. *See* Birnbaum & Monahan, *The Nominee Trust in Massachusetts Real Estate Practice*, 60 Mass. L.Q. 364 (1976); *Apahouser Lock & Sec. Corp. v. Carvelli*, 26 Mass.App.Ct. 385, 528 N.E.2d 133 (1988); *Penta v. Concord Auto Auction, Inc.*, 24 Mass.App.Ct. 635, 511 N.E.2d 642 (1987). The Debtor's 1984 Declaration of Trust contains these features: the trustee is given power to deal with the trust property "[W]hen, as [sic] if and to the extent specifically directed by a majority of the beneficial interests ..."; beneficial interests are to be listed on a schedule filed with the trustee rather than being represented by certificates issued to the beneficiaries; assignment of beneficial interests is subject to a right of first refusal held by the other beneficiaries; the trustee is to immediately pay over income to the beneficiaries; the trustee may be removed, or the trust may be amended, by the holders of fifty-one percent of the trust's beneficial interest; and the trust instrument provides that "No Trustee or beneficiary of this Trust shall be held personally or individually liable for any of the obligations incurred or entered into on behalf of the Trust and each person who deals with the Trustees shall look solely to the Trust Estate for satisfaction of any claims which such person may have against the Trust."

The Debtor was created in order to combine the talents and resources of Michael R. Little ("Little") and Alan M. Belanger ("Belanger") in the purchase of house lots and the installation and sale of modular homes thereon. Either Little or Belanger has acted as trustee of the Debtor since its inception. Little contributed $25,000 and holds a fifty-one percent beneficial interest. Belanger provided his expertise as a real estate broker, and holds the remaining forty-nine percent interest. No schedule of beneficial interest was ever filed with the trustee. The Debtor has purchased and excavated lots, poured foundations, installed modular homes on sites, and provided the plumbing and other trade work necessary to complete the homes. It has sold over 200 lots and homes since 1984, at its peak employing twenty persons. On March 7, 1989 the Debtor filed a Chapter 11 petition with this Court, scheduling almost $4 million of secured debts owed to a number of creditors and about $300,000 in unsecured debts owed to some 100 creditors. The Bank has been its principal mortgage lender and is its largest secured creditor.

### II. DEBTOR'S ELIGIBILITY

A "person" (with exceptions not material here) may be a debtor under Chapter 11. 11 U.S.C. § 109(d). Included within the definition of "person" is an individual, a

partnership and a corporation. 11 U.S.C. § 101(35).

A corporation is defined as follows:

"corporation"—

(A) includes—

(i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;

(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

(iii) joint-stock company;

(iv) unincorporated company or association; or

(v) *business trust* [emphasis supplied]; but

(B) does not include limited partnership. 11 U.S.C. § 101(8).

Section 1(8) of the Bankruptcy Act of 1898 (30 Stat. 544), as amended in 1926 (44 Stat. 662), contained essentially the same definition of a corporation, except that instead of using the term "business trust" it employed this language:

any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument

█ The unadorned term "business trust" first appeared in a proposed new bankruptcy act which was part of the Report of the Commission on the Bankruptcy Laws of the United States, H.R.Doc. No. 93–137, 93d Cong., 1st Sess. Part II at 27, (1973). The Commission subsequently filed its proposal as a bill in both houses of Congress, thus commencing the legislative process which culminated in the Bankruptcy Reform Act of 1978, P.L. 95–598, 92 Stat. 2549. The Commission's report contains these statements:

The reference at the end of the definition to a "business trust" eliminates the requirement of the present Act that beneficial interest or ownership "be evidenced by certificate or other written instrument." The requirement gives undue significance to an evidentiary formality. In construing the term "business trust" the courts may be expected to give heed to the canon of e[j]usdem generis. *Cf. Pope & Cottle Co. v. Fairbanks Realty Trust,* 124 F.2d 132 (1st Cir.1941).

This explanation does not appear in any later legislative history. It is clear from the later history, however, that except for a "business trust" a trust is not a "person" eligible for relief. Both the House and Senate Committee Reports state: "The definition [of "person"] does not include an estate or a trust ..." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 313 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 25 (1978), U.S. Code Cong. & Admin.News 1978, pp. 5787, 5810, 6270.

The decisions are sharply, and perhaps hopelessly, divided on the meaning of "business trust." Some, following the pattern established under the prior Act, hold that it means a trust which is deemed a corporation for federal income tax purposes under the test enunciated in *Morrissey v. Commissioner,* 296 U.S. 344, 359, 56 S.Ct. 289, 296, 80 L.Ed. 263 (1935), namely a trust having (i) business functions, (ii) transferable certificates of beneficial interest, (iii) centralized management, (iv) continuity of life and (v) limited liability. *E.g., Mosby v. Boatmen's Bank of St. Louis County (In re Mosby),* 61 B.R. 636 (E.D. Mo.1985), aff'd per curiam 791 F.2d 628 (8th Cir.1986); *In re Vivian A. Skaife Irrevocable Trust Agreement # 1,* 90 B.R. 325 (Bankr.E.D.Tenn.1988); *In re Betty L. Hays Trust,* 65 B.R. 665 (Bankr.D.Neb. 1986); *In re L & V Realty Trust,* 61 B.R. 423 (Bankr.D.Mass.1986). Others look to the trust's operations to determine whether they include substantial business activities, disregarding the terms of the creating document. *E.g., In re Arehart,* 52 B.R. 308 (Bankr.M.D.Fla.1985) (land trust with some business activities deemed eligible); *In re Gonic Realty Trust,* 50 B.R. 710 (Bankr.D. N.H.1985) (trust created for benefit of trustee and his wife which owned and leased a mill complex deemed eligible); *In re Dolton Lodge Trust No. 35188,* 22 B.R. 918 (Bankr.N.D.Ill.1982) (land trust with no business activities ineligible); *In re Dreske Greenway Trust,* 14 B.R. 618 (E.D.Wis. 1981) (trust created to conduct business

which in fact did so deemed eligible); *In re Cohen*, 4 B.R. 201 (Bankr.S.D.Fla.1980) (land trust held ineligible where it conducted minimal zoning and filling activities); *In re Treasure Island Land Trust*, 2 B.R. 332 (M.D.Fla.1980) (land trust ineligible where declaration of trust prohibited business activities and trust was then engaging in none).

History sheds some light. The bankruptcy law of this country, unlike that of England, has always barred estates from relief in bankruptcy. 1 *Collier on Bankruptcy*, § 4 at 200 (13th ed. 1923). Under both the Bankruptcy Act of 1867 (14 Stat. 517) and the Bankruptcy Act of 1898 (30 Stat. 544) the courts construed the word "person" in the eligibility provision to exclude estates. *In re Fackelman*, 248 F. 565 (D.C.S.D.Cal. 1918); *Adams v. Terrell*, 4 F. 796 (D.C.W. D.Tex.1880). As explained in *Adams v. Terrell*, a principal reason for doing so was the view that state probate law provides an adequate framework for the administration of insolvent estates. The continued use by Congress of the word "person" in the law's eligibility provision indicates Congressional agreement with this reasoning. In denying general eligibility to trusts, Congress presumably viewed trusts, even those of the intervivos variety, as being much like estates in that they are typically enmeshed in an estate plan and are under the control of state probate courts.

A trust which is not part of a settlor's estate plan presents different considerations. A probate court is not its traditional forum. Its beneficiaries are investors in a business enterprise rather than recipients of a settlor's largess. Congress obviously recognized these differences when in 1926 it amended what was then § 1(8) of the prior Act to allow bankruptcy relief for "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." This opened the door to the traditional Massachusetts business trust. Because of the restrictive language, eligibility continued to be denied to a trust whose creating instrument was the only document evidencing beneficial ownership. *E.g., Pope & Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132 (1st Cir.1941). The Commission's Report previously quoted makes it clear that the Commission viewed this documentary requirement as a needless technicality, and I believe Congress agreed when it adopted the simple phrase "business trust." The failure of Congress to spell this out further in a committee report seems inconclusive in comparison to the wording of the statute itself. That it chose to make such a change is sufficient indication of a purpose to broaden the types of trusts which can qualify. *In re Treasure Island Land Trust*, 2 B.R. at 332. That purpose is consistent with the general statutory framework which liberalized eligibility in other contexts. *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486 (Bankr.S.D.Cal.1983).

One court has stated that the distinction should be between trusts "created for the purpose of carrying on some kind of business or commercial activity for profit and those created to preserve the trust *res.*" *In re Treasure Island Land Trust*, 2 B.R. at 334. That dichotomy points in the right direction, but the test should be simpler— whether the trust was created to transact business for the benefit of investors. This latter test is certain to deny bankruptcy relief to the traditional donative trust created for the benefit of family members, a result which is consistent with both the history of estate ineligibility and what appears to be the core reasoning of most of the decisions. *E.g., In re Johnson*, 82 B.R. 618 (Bankr.S.D.Fla.1988); *In re Walker*, 79 B.R. 59 (Bankr.M.D.Fla.1987). *Cf. In re Gonic Realty Trust*, 50 B.R. 710 (Bankr.D. N.H.1985). A distinction between the conduct of a business and the preservation of trust principal through investment, moreover, seems too fine for practical application, particularly where the trust invests in real estate.

■ I conclude, therefore, that Congress intended to permit bankruptcy relief for all trusts which are created for the purpose of transacting business and whose beneficiaries make a contribution in money or money's worth to the enterprise, without regard to whether the trust has character-

istics of a corporation such as separate certificates of ownership. The Debtor certainly meets this standard. But its trustee acts under the direction of the holders of a majority of its beneficial interests. This is the prime indicia of an agent, not a trustee, as explained in the leading treatise:

> An agent acts for, and on behalf of, his principal and subject to his control; a trustee as such is not subject to the control of his beneficiary, although he is under a duty to deal with the trust property for the latter's benefit in accordance with the terms of the trust, and can be compelled by the beneficiary to perform this duty. The agent owes a duty of obedience to his principal; a trustee is under a duty to conform to the terms of the trust. . . .

> A person may be both agent of and trustee for another. If he undertakes to act on behalf of the other and subject to his control he is an agent; but if he is vested with the title to property that he holds for his principal, he is also a trustee. In such a case, however, it is the agency relation that predominates, and the principles of agency, rather than the principles of trust, are applicable. 1 A. Scott and W. Fratcher, *The Law of Trusts*, § 8 at 88, 95 (4th ed. 1987).

The trustee of the Debtor cannot take any action unless specifically directed to do so by a majority of the beneficial interests. He is required immediately to pay over all income to the beneficiaries. This so-called "trust" is a creature of the beneficiaries and a mere conduit for their income. The trustee of the Debtor is the agent of Little and Belanger, the beneficiaries.

Little and Belanger are therefore the owners of both the legal and beneficial interest in the "trust" property. They own the property and operate the business as co-tenants, co-venturers or partners. If they are only co-tenants, their personal liability to a particular creditor depends upon application of principles of contract and agency law to the specific facts. If they are co-venturers or partners, their liability is general. Mass.Gen.L. ch. 108A, § 15.

■ A partnership, as defined in the Uniform Partnership Act adopted in Massachusetts, is an "association of two or more persons to carry on as co-owners a business for profit." Mass.Gen.L. ch. 108A, § 6(1). Little and Belanger are clearly associated as owners, and they obviously have joined together for profit purposes. Their agreement to share those profits is most indicative. A party's receipt of a share of the profits is *prima facie* evidence that he is a partner, unless the profits were received in payment of principal or interest on a debt, as rent, as an annuity, as the proceeds from the sale of a business interest or as "wages of an employee." Mass. Gen.L. ch. 108A, § 7. An agreement to share profits, rather than the actual receipt of profits, is sufficient for this purpose. 1 *Bromberg and Ribstein on Partnership* § 2.07 (1st ed. 1988). Little and Belanger made such an agreement through the Debtor's Declaration of Trust which grants them net income in accordance with their respective ownership interests. Because distributions to them are governed by this document, the fact that they may have received income in the form of employee "wages" does not destroy the *prima facie* effect of their agreement to share profits. The receipt of a share of profits in the form of wages is consistent with the existence of a partnership. *Parks v. Riverside Ins. Co. of America*, 308 F.2d 175 (10th Cir.1962). Nor is it necessary for the existence of a partnership that the parties expressly agree on the sharing of losses. Even if loss sharing is viewed as a pre-requisite for partnership existence, an agreement to share losses is implied from an agreement to share profits or other indicia of a partnership. *Id.* at 180; *Minute Maid Corp. v. United Foods, Inc.*, 291 F.2d 577 (5th Cir. 1961), *cert. denied* 368 U.S. 928, 82 S.Ct. 364, 7 L.Ed.2d 192 (1961), *Anderson v. Nat'l Producing Co.*, 253 F.2d 834 (2d Cir. 1958), *cert. denied* 357 U.S. 906, 78 S.Ct. 1151, 2 L.Ed.2d 1157; *Kaufman–Brown Potato Co. v. Long*, 182 F.2d 594 (9th Cir. 1950); *Crest Constr. Co. v. Ins. Co. of North America*, 417 F.Supp. 564 (W.D. Okla.1976). The association of Little and Belanger also qualifies under the statute's

requirement that the association be one to "carry on ... a business," language which has been interpreted to require an intent to conduct a business over a substantial period of time, rather than joining together as joint venturers in a single, limited investment. *See Shinberg v. Garfinkle*, 361 Mass. 109, 278 N.E.2d 738 (1972); *Shain Inv. Co., Inc. v. Cohen*, 15 Mass.App.Ct. 4, 443 N.E.2d 126 (1982). The right to participate in the control of the business is often referred to as indicative of a partnership interest. *E.g., Martin v. Stone*, 332 Mass. 540, 126 N.E.2d 196 (1955). *See*, 1 *Bromberg and Ribstein on Partnership, supra* at § 2.07. Belanger has that right, even though he can be outvoted by Little's fifty-one percent interest. The right of an individual partner to participate equally in the management of the partnership business is in any event subject to elimination or restriction under the partnership agreement. Mass.Gen.L. ch. 108A, § 18. Nor is it necessary that Belanger have made an investment in money. His contribution of real estate expertise is sufficient. *Kaufman–Brown Potato Co. v. Long*, 182 F.2d at 600.

■ It is true that the intention to form a partnership is often referred to as an element of partnership existence. *See, e.g., Commissioner v. Culbertson*, 337 U.S. 733, 741–42, 69 S.Ct. 1210, 1213–14, 93 L.Ed. 1659 (1949); *Mitchell v. Gruener*, 251 Mass. 113, 123, 146 N.E. 252, 255, (1925); *Kravitz v. Pressman, Frohlich & Frost*, 447 F.Supp. 203, 210 (D.Mass.1978). Little and Belanger presumably drew compensation in the form of an employee's salary. They may not have considered themselves partners. They may have had in mind only ownership in a trust whose written declaration purports to prevent personal liability. The only necessary intention, however, is an intent to do those things which constitute a partnership. The law fixes the legal consequences which flow from the conduct of the parties. *E.g., Gunnison v. Langley*, 85 Mass. 337 (3 Allen) (1862); *West v. Kerr–McGee Corp.*, 586 F.Supp. 493 (E.D.La.1984), *rev'd on other grounds*, 765 F.2d 526 (5th Cir.1985); 1 R. Rowley, *Rowley on Partnership,*

§ 7.6 (2d ed. 1960). The converse is also true. Parties cannot establish a partnership through mere intention and reference to themselves as partners. *E.g., Martin v. Stone*, 332 Mass. at 540, 126 N.E.2d at 196.

I conclude that Little and Belanger have formed a partnership under the name of Medallion Realty Trust. It is conceivable that the provision in the Declaration of Trust stating that the beneficiaries shall not be personally liable may in theory prevent their personal liability to a particular creditor who assented to the provision. *See Penta v. Concord Auto Auction, Inc.*, 24 Mass.App.Ct. 635, 511 N.E.2d 642 (1987). That question is not before me. Nor must I now decide the effect of that provision in bankruptcy, where the rights of the representative of the bankruptcy estate come into play. *See*, 11 U.S.C. § 544.

The form of trust known as a Massachusetts business trust was in its day perhaps more in use throughout the country than is the nominee trust today. Its life span was prolonged in Massachusetts for real estate investment purposes because until recent years its rental income and distributions therefrom were exempt from Massachusetts income tax. *See, e.g., State Tax Comm'n v. Fine*, 356 Mass. 51, 247 N.E.2d 701 (1969). In viewing the Debtor as a partnership, I do not rely upon the line of Massachusetts decisions holding that the Massachusetts business trust is actually a partnership due to the control over its affairs held by its beneficiaries, a degree of control which is far less extensive than that present here. *See, e.g., First Nat'l Bank of New Bedford v. Chartier*, 305 Mass. 316, 25 N.E.2d 733 (1940) ("trust" held liable in contract as a partnership where it was managed by directors elected by shareholders who could remove trustees); *Priestley v. Treasurer & Receiver Gen.*, 230 Mass. 452, 120 N.E. 100 (1918) (deemed partnership for tax purposes where shareholders held formal meetings at which they could remove and replace trustees, and where trustees' powers were restricted); *Dana v. Treasurer & Receiver Gen.*, 227 Mass. 562, 116 N.E. 941 (1917) (deemed

partnership for tax purposes where shareholders met and elected trustees and had the power to amend a declaration of trust); *Frost v. Thompson,* 219 Mass. 360, 106 N.E. 1009 (1914) (entity liable in contract as partnership rather than trust where shareholders could remove and replace trustees without cause and terminate or amend the trust). *See also, Williams v. Milton,* 215 Mass. 1, 102 N.E. 355 (1913), where the court collected and synthesized the decisions, stressing the factor of control. These decisions appear to have lost their authority. The Supreme Judicial Court of Massachusetts has since refused to apply partnership principles to the Massachusetts business trust because of its many corporate characteristics. *See State Street Trust Co. v. Hall,* 311 Mass. 299, 41 N.E.2d 30 (1942) (certificate holder refused partner's right of dissolution). The classic Massachusetts business trust is, however, a far different species from the nominee trust before the Court. The certificate holders of a Massachusetts business trust do not control the trust's day-to-day operations. These are run by the trustees, or in some cases by a board of managers or directors, all of whom are periodically elected by the certificate holder, much as directors of a corporation are elected by stockholders. The trustee of the Debtor, in contrast, cannot take any action unless specifically directed to do so by a majority of the beneficial interests.

### III. SUMMARY AND ORDERS

To the extent that the Debtor may be regarded as a trust, it is an eligible "business trust." But the Debtor is properly classified as a partnership. As such, it is clearly eligible for bankruptcy relief. 11 U.S.C. §§ 109, 101(35). There is no reason not to consider its Chapter 11 petition to have been filed as a partnership petition, even though it was presumably filed in the belief, or hope, that the Debtor is a trust. One partner may sign and file a voluntary Chapter 11 petition on behalf of the partnership if the action is taken with the consent of all the partners. Bankr.Rule 1004. There was such consent here.

It is therefore

ORDERED, that the Bank's motion to dismiss is DENIED.

FURTHER ORDERED, that pursuant to Bankr.Rule 1007(g) 'Little and Belanger shall, within thirty days from the date hereof, file with the Court a statement of personal assets and liabilities.