RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0316P (6th Cir.)
File Name: 02a0316p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

In re: KENNETH ALLEN
KNIGHT TRUST,
                *Debtor.*

_____

ANGELA LYNN BRADY-
MORRIS; DENISE MICHELE
BRADY,
       *Plaintiffs-Appellants,*

          *v.*

J. BAXTER SCHILLING,
Trustee,
       *Defendant-Appellee.*

No. 00-5530

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00780—Charles R. Simpson III, District Judge;
Henry H. Dickinson, Bankruptcy Judge.

Argued: February 1, 2002

Decided and Filed: September 13, 2002

Before: SUHRHEINRICH, SILER, and BATCHELDER,
Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Harry Bernard O'Donnell IV, Louisville, Kentucky, for Appellants. J. Baxter Schilling, Louisville, Kentucky, for Appellee. **ON BRIEF:** Harry Bernard O'Donnell IV, Louisville, Kentucky, for Appellants. J. Baxter Schilling, Louisville, Kentucky, for Appellee.

————————————

**OPINION**

————————————

ALICE M. BATCHELDER, Circuit Judge. Plaintiffs-Appellants Angela Brady-Morris and Denise Brady ("Brady's daughters") appeal the district court's judgment affirming the bankruptcy court's declaration that the debtor Kenneth Allen Knight Trust ("Trust") is a "business trust" and therefore entitled to bankruptcy protection. Brady's daughters argue that the bankruptcy court applied the wrong law and should instead have used either Kentucky's definition of "business trust," or an alternate definition taken from federal case law. Finding no merit to their claims, we affirm.

**Statement of Facts**

On June 5, 1991, the Trust filed a voluntary petition under Chapter 11 of the Bankruptcy Code. After reviewing the background of the case, the bankruptcy court converted it into a Chapter 7 case; the court also consolidated it with three other related cases and appointed as trustee the Appellee J. Baxter Schilling. The bankruptcy court subsequently issued a memorandum opinion in which it made a number of factual findings and, on the basis of these findings, concluded that the Trust was a "business trust." This conclusion was important because it meant that the Trust qualified as a debtor under the

Trust's res for the beneficiaries. We will not discuss this further, however, because Brady's daughters appeal only the choice of law, and they do not contest the finding that the Trust was a business trust under the law that the bankruptcy court applied.

**Conclusion**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

that was not specifically established to generate a profit may still be considered a business trust." *Id*. at 90.

We are satisfied that the standard articulated in our prior opinion in this case is reasonably clear and workable, and reflects the intent of Congress. The standard consists in two propositions: first, "trusts created with the primary purpose of transacting business or carrying on commercial activity for the benefit of investors qualify as business trusts, while trusts designed merely to preserve the trust res for beneficiaries generally are not business trusts"; and second, "the determination is fact-specific, and it is imperative that bankruptcy courts make thorough and specific findings of fact to support their conclusions"—findings, that is, regarding what was the intention of the parties, and how the trust operated.[1] *Brady*, 1997 WL 415318, at *4. In so holding, we also hold that no exception to the law of the case doctrine applies: the legal standard we adopted in the prior opinion was not a "clearly erroneous decision which would work a manifest injustice." *Petition of United States Steel Corp.*, 479 F.2d at 494.

We also hold that the bankruptcy court was correct in finding that the primary purpose of the Trust was to transact business or carry on commercial activity for the benefit of James Brady, the investor, and not merely to preserve the

---

[1] The court in *Cutler*, 831 F. Supp. 1008, divided the business trust cases into three categories: (1) cases holding that "only trusts with the attributes of a corporate profit making entity may be termed 'business trusts,'"—a category in which *Treasure Island* was held out as the exemplar; (2) cases following *Morrissey*; and (3) cases that "have focused primarily on the trust's operations in administering funds or a business to provide profits or an increase in assets for beneficiaries," of which *Medallion Realty Trust*, 103 B.R. 8, is an example. *Cutler*, 831 F. Supp. at 1015–16. We find *Cutler*'s division between categories (1) and (3), however, to be artificial: though *Treasure Island* did say that "[i]t is the trust's similarity to a corporation that permits it to be a debtor in bankruptcy," 2 B.R. at 334, the salient similarity in *Treasure Island* was the purpose of carrying on business for the profit of the beneficiaries—which is the focus of the cases in *Cutler*'s category (3).

Code, since family trusts—which the Trust here would otherwise be—are not eligible for bankruptcy treatment, but business trusts are: only a "person" can be a debtor under the Bankruptcy Code, 11 U.S.C. § 109; the term "person" includes individuals, partnerships, and corporations, *id*. § 101(41); and the definition of "corporation" includes "business trusts," *id*. § 101(9)(A)(v). The Bankruptcy Code does not define "business trust," however, and federal courts have generally either looked to state law for a definition, or have created their own.

Brady's daughters wanted the litigation between the Trust and its potential creditors to take place outside the bankruptcy court, so they appealed the decision. On appeal, the district court initially found the Trust to be a family trust and consequently not entitled to bankruptcy protection, but upon the Trustee's motion to reconsider, the court made independent factual findings—outside those of the bankruptcy court—and concluded that the Trust was in substance Brady's personal property and hence subject to the Bankruptcy Code.

Brady's daughters again appealed, and we reversed in a per curiam unpublished opinion: *Brady v. Schilling* (*In re Kenneth Allen Knight Trust*), 121 F.3d 708, 1997 WL 415318 (6th Cir. July 22, 1997). We found, first, that the district court had exceeded its scope of review when it made independent factual findings, and that if the bankruptcy court's factual findings had been indeterminate, the district court should have remanded for further factual findings. *Id*., at *3. We next considered the merits of the bankruptcy court's conclusion that the Trust was a business trust. Because, as we noted, "[c]ourts have not adopted a uniform definition of business trust for purposes of the Bankruptcy Code," and this circuit had not spoken on the issue, we had to choose which of several available definitions we would adopt. *Id*. We chose a version of the test articulated in *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr. M.D. Fla. 1980)—quoting several sentences from the case, and restating the definition in a slightly altered form. *Brady*, 1997 WL 415318, at *4. But because that definition required a fact-

specific finding about the primary purpose of the Trust, and because the bankruptcy court had not made such a finding, we remanded the case to the bankruptcy court for further findings of fact. *Id*. On remand the bankruptcy court added new findings to those it had previously made, and found as follows.

The Trust was created in 1978 by James Brady (Brady), who named it after his nephew Kenneth Allen Knight and designated that nephew as the Trust's settlor. Knight purportedly paid a token $10 into the Trust (for which he was reimbursed by Brady), and thus began and ended Knight's personal involvement in the Trust. The Trust's beneficiaries were Brady and, secondarily, his daughters, Angela and Michele Brady—the Appellants here. Brady, however, was also the trustee (with one co-trustee, at first), and he had virtually total control of the Trust, including the authority to manage its assets.

The Trust owned two principal assets: Brady's personal residence ("Residence"), and 100% of the stock of KAK Holdings, Inc. The Residence was acquired by the Trust in two stages. The first 50% of the legal title to the Residence was transferred to the Trust by deed dated April 26, 1982. The second 50% was deeded to the Trust in April of 1986 from Brady's former wife, Anna Brady; Brady had acquired her 50% interest for $125,000, under the terms of their divorce decree.

KAK Holdings, Inc., the Trust's other principal asset, owned four subsidiary corporations ("Subsidiaries"): KAK Real Estate, Inc., Investment Advisors, Inc., Ralliana, Inc., and Direct Participation, Inc. KAK Real Estate, in turn, owned various real estate investments, including Brady's vacation home in Beaver Creek, Colorado. Investment Advisors owned a condominium in the same city. Ralliana, Inc. was the general partner of a limited partnership that owned and operated various Rally's fast food franchises. Direct Participation owned interests in restaurants and other corporations.

F.2d 97, 101 (8th Cir. 1959); *Pope & Cottle Co. v. Fairbanks Realty Trust*, 124 F.2d 132, 133 (1st Cir. 1941).

Things became more complicated after the Bankruptcy Reform Act of 1978, when Congress deleted the above-quoted language and instead provided that the term "corporation" included a "business trust," 11 U.S.C. § 101(9)(A)(v), without defining the new term. Since then, some courts have continued to require transferable certificates of ownership, relying on *Morrissey*, 296 U.S. 344, in which the Supreme Court set out the test for when trusts may be treated as corporations under the Internal Revenue Code—a test requiring, inter alia, transferable certificates of ownership. *See, e.g., Mosby v. Boatmen's Bank of St. Louis County* (*In re Mosby*), 46 B.R. 175, 177 (Bankr. E.D. Mo. 1985). Though Brady's daughters urge us to follow *Morrissey*, we decline to do so: the *Morrissey* criteria were meant for the Internal Revenue Code, and they contradict the 1978 liberalization of the Bankruptcy Code's treatment of business trusts, as discussed above. We join those courts that have concluded that Congress intended to dispense with the transferable-certificate-of-ownership requirement when it changed the statute in 1978. *See, e.g., Treasure Island*, 2 B.R. at 334 ("In eliminating the requirement of written instruments, Congress has presumably made it possible for a broader variety of trusts to obtain relief in the bankruptcy courts.").

Courts that reject the transferable-certificates requirement have looked to a variety of relevant factors, but the consensus has been that "there is no definitive list of characteristics that constitute a business trust," and thus "each decision is based on a very fact-specific analysis of the trust at issue." *In re Secured Equip. Trust*, 38 F.3d at 89; *see also In re Eagle Trust*, 1998 WL 635845, at *4 (listing various factors courts have considered). *In re Secured Equipment Trust* is the only other Court of Appeals decision addressing this issue; it required that the trust "transact business for the benefit of investors," and—though it found a profit-making purpose relevant in the business-trust inquiry—allowed that "a Trust

*In re Arehart*, 52 B.R. 308, 310–11 (Bankr. M.D. Fla. 1985). We conclude that *Butner* does not control, and that the definition of "business trust" properly belongs to federal, rather than state, law.

The next problem concerns *which* federal definition should apply, for there are a number of court-made definitions, and indeed perhaps the only thing that all the cases have in common is the recognition that they all differ. *See Shawmut Bank Conn., Nat'l Ass'n LNC Invs., Inc. v. First Fidelity Bank* (*In re Secured Equip. Trust of E. Air Lines, Inc.*), 38 F.3d 86, 89 (2d Cir. 1994) ("[N]o court has thus far adopted a clear definition of business trust for purposes of the Bankruptcy Code[.]"); *In re Eagle Trust*, 1998 WL 635845, at *4 (E.D. Pa. Sept. 16, 1998) ("The various courts that have addressed the [business trust] issue have applied different factors[.]"); *Cutler v. 65 Sec. Plan*, 831 F. Supp. 1008, 1014 (E.D.N.Y. 1993) ("A considerable amount of case law has been devoted to establishing which trusts fall within [the business trust] category. A uniform body of law has not resulted."); *In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. at 675 ("Analysis of existing case law reveals no controlling precedent that provides a definitive answer to this question."); *In re Village Green Realty Trust*, 113 B.R. at 113 ("[T]he decisions are, if not hopelessly divided, at least certainly divergent[.]"); *In re Medallion Realty Trust*, 103 B.R. at 10 ("The decisions are sharply, and perhaps hopelessly, divided on the meaning of 'business trust.'").

The law in this area has not always been so confused. Prior to 1978, the Bankruptcy Code's definition of "corporation" did not include the term "business trust," but instead provided that a "corporation" could be "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." 11 U.S.C. § 101(8) (1976 ed.). Courts construing this provision consistently required that the shares of the beneficiaries be transferable and that they be evidenced by a certificate or writing. *See Associated Cemetery Mgmt., Inc. v. Barnes*, 268

The Trust's incomplete checking records indicated that most if not all of the Subsidiaries' financial activities were conducted through the Trust and its bank accounts. Occasionally, the Trust would obtain "financing" for the Subsidiaries from a Maryland bank, via an illegal method: the Trust would claim to own assets that in fact belonged to an entirely different trust, owned by one Richard Thurman. When Thurman found out what Brady was doing, he filed suit against Brady, the Trust, and other related entities. Brady subsequently filed the voluntary Chapter 11 petition for bankruptcy that led to the present litigation.

After making these supplemented factual findings on remand, the bankruptcy court applied the test we had adopted in the first appeal and found the Trust to be a business trust: Brady was the principal beneficiary; he was the primary trustee (along with a trust company and, later, one of his daughters); he alone directed the Trust's business activities; he alone could remove other trustees; the other residual beneficiaries would forfeit their interest under the Trust if they sued Brady over how he operated the Trust; though both of the 50% transfers of the Residence were ostensibly "gifts" to the Trust, there was no evidence that Brady filed any gift tax returns, or that the Trust did anything with the residence, and "[t]he record clearly shows that Brady treated these transfers, at best, as contributions of capital to his KAK Trust business entity"; Brady did not disclose to his original co-trustee the first 50% transfer of the Residence; the Residence was the only non-business asset the Trust ever owned; Brady's gift of the Residence was no indication of a non-business purpose, because he "routinely titled real estate, which he used personally, in his business entities" (for example, KAK Real Estate owned his vacation home in Colorado); "most, if not all financial activities of [the Trust's] Subsidiaries were conducted through KAK Trust and its bank accounts"; and Brady treated the Trust just as he treated his other business entities. The bankruptcy court concluded that "it is clear that James Brady created this trust solely for his benefit and was in actuality the settlor/grantor of the KAK trust," and that "it is beyond dispute that the KAK Trust was

intended to operate as a 'holding company' for James Brady's various business enterprises"; thus the bankruptcy court found that "the sole purpose of the KAK Trust, from its inception, was to be an entity through which James Brady could conduct his business affairs."

Brady's daughters again appealed to the district court, which affirmed the bankruptcy court. This time the facts were no longer in dispute, and the issue was whether the bankruptcy court had applied the correct definition of "business trust." Brady's daughters asserted that the bankruptcy court erred because it should have adopted a definition of "business trust" from Kentucky law or from *Morrissey v. Commissioner of Internal Revenue*, 296 U.S. 344 (1935), and argued that under these alternate definitions the Trust was not a business trust. The district court chose not to evaluate the merits of their choice-of-law claim and instead held fast to our earlier definition. In the district court's words,

> [f]ortunately for the Bankruptcy Court and this reviewing court—though perhaps unfortunately for the Brady daughters—the Court of Appeals provided clear and specific guidance to accompany its remand of this case. Accepting the arguments presented by the Brady daughters would require that we disregard that guidance, and we must decline the invitation to do so.

The district court concluded that since the bankruptcy court had obediently followed the Court of Appeals' instructions—both in making findings of fact and in making findings of law—"its conclusion is unassailable." Except by Brady's daughters, who now appeal.

### Analysis

In a case which comes to us from the bankruptcy court by way of an appeal from a decision of a district court, we review directly the decision of the bankruptcy court. We accord no deference to the district court's decision; we apply the clearly erroneous standard to the bankruptcy court's findings of fact,

between the bankruptcy trustee and the mortgagee—holds the property interest in the rents collected between the time that a mortgagor declares bankruptcy and the time of the foreclosure sale of the mortgaged property. 440 U.S. at 49. In holding that state law should control, the Court noted that "[p]roperty interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id*. at 55. It is this language to which the courts applying a state law definition of "business trust" usually cite.

The connection between *Butner* and the "business trust" question is by no means plain, however—particularly because *Butner* dealt with substantive property rights, whereas here the question is instead one of procedure, regarding whether the Trust has standing to file a bankruptcy case. *See In re Sung Soo Rim Irrevocable Intervivos Trust*, 177 B.R. 673, 676 (Bankr. C.D. Cal. 1995) ("[T]he availability of access to the federal bankruptcy courts and the availability of bankruptcy relief itself are ultimately questions of federal, not state, law. Standing to file a bankruptcy case . . . is a procedural question, not a substantive one."); *In re Woodsville Realty Trust*, 120 B.R. 2, 4 n.2 (Bankr. D.N.H. 1990) ("[I]n the absence of [any] explicit contrary Congressional intent, the Bankruptcy Code definition of qualified trust debtors was to be developed on a uniform national basis by case-by-case adjudication."). And, as one bankruptcy court observed,

> [w]hether an entity is eligible for relief under title 11 of the United States Code is purely a matter of federal law. To hold otherwise would result in different results in different states and an entity would be eligible for relief in one state but not in another. Clearly this is not what Congress intended when it enacted the bankruptcy laws in this country in conformity with the mandate of Article I, § 8, Cl. 4 of the Constitution, which provides that "Congress shall have the power . . . to establish . . . uniform laws on the subject of bankruptcies."

practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). Nevertheless, a court's power to reach a result inconsistent with a prior decision reached in the same case is "to be exercised very sparingly, and only under extraordinary conditions." *Gen. Am. Life Ins. Co. v. Anderson*, 156 F.2d 615, 619 (6th Cir. 1946). To differ, "we must find some cogent reason to show the prior ruling is no longer applicable," such as if our prior opinion was a "clearly erroneous decision which would work a manifest injustice." *In re Petition of United States Steel Corp.*, 479 F.2d 489, 494 (6th Cir. 1973).

Brady's daughters argue that the panel erred by choosing a federal law definition rather than that of Kentucky—the state where the trust was created. They are correct in observing that some lower federal courts have looked to state law for the definition of "business trust," but we find those cases unpersuasive: they either do not explain their reasoning, or merely cite to the case of *Butner v. United States*, 440 U.S. 48 (1979), as if that case provided the last word. *See Loux v. Gabelhart* (*In re Carriage, House, Inc.*), 146 B.R. 352, 355–56 (D. Vt. 1992) ("We know from *Butner* . . . to look to State law to ascertain property rights (or, in other words, to determine what sort of 'entity,' if any, would be created under state law based on the facts).");  *In re Mohan Kutty Trust*, 134 B.R. 987, 989 (Bankr. M.D. Fla. 1991) (finding that the trust was not a business trust under either the state's definition or the federal case law definitions); *In re Heritage N. Dunlap Trust*, 120 B.R. 252, 254 (Bankr. D. Mass. 1990) (holding that "[s]ince the Code does not define what constitutes a business trust, we look to state law," and citing *Butner* without comment); *In re Village Green Realty Trust*, 113 B.R. 105, 113 (Bankr. D. Mass. 1990) (following *Butner* because the federal definition of "business trust" is not uniform); *In re Milani Family Irrevocable Trust*, 62 B.R. 6, 7 (Bankr. S.D. Fla. 1986) (applying state law without discussing why).

In *Butner*, the Supreme Court considered whether federal or state law should govern in deciding which party—as

and we review de novo the bankruptcy court's conclusions of law. *Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 849 (6th Cir. 2002).

The initial question is whether the directive we issued in *Brady*, 1997 WL 415318, at *4, articulated the law of the case such that the bankruptcy court was bound to follow it. "Issues decided at an early stage of the litigation, either explicitly or by necessary inference from the disposition, constitute the law of the case." *EEOC v. United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus. of the United States and Canada, Local No. 120*, 235 F.3d 244, 249 (6th Cir. 2000) (quoting *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997)). We will first examine what we said in *Brady*, and whether those statements established the law of the case; and second, consider whether an exception to that doctrine applies here.

### A. Whether Brady Established the Law of the Case

We are concerned here with whether the prior *Brady* opinion established the "primary purpose" test as the law of the case, either explicitly or implicitly, or whether that opinion left the bankruptcy court with discretion to choose which law should apply. *See* 18B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE § 4478, p. 657 (2002) ("The decision of an issue need not be express to establish the law of the case. Implicit decision suffices[.]").

In *Brady*, we cited *Treasure Island*'s statement that "[t]he basic distinction between business trusts and nonbusiness trusts is that business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; the object of a nonbusiness trust is to protect and preserve the trust res." *Treasure Island,* 2 B.R. at 334. We then adopted a version of this rule, stating that "trusts created with the primary purpose of transacting business or carrying on commercial activity for the benefit of investors qualify as business trusts, while trusts designed merely to preserve the trust res for beneficiaries generally are not business trusts." *Brady*, 1997 WL 415318, at *4. We concluded by observing

that the bankruptcy court had "failed to make sufficiently thorough factual findings to enable us to . . . discern from the record the true purpose of the KAK trust," and instructed the bankruptcy court to make those findings. *Id*.

Brady's daughters argue, however, that these statements were insufficient to establish the "primary purpose" definition of business trusts as the law of the case, because in support of our holding we string-cited three cases, each of which could be said to stand for a different proposition: *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486, 490 (Bankr. S.D. Cal. 1983), which explicitly adopted a "primary purpose" definition; *In re Gonic Realty Trust*, 50 B.R. 710, 713 (Bankr. D.N.H. 1985), which held more generally that "the lack of transferable shares by numerous beneficiaries is no longer a relevant factor" in deciding whether a trust is a business trust; and *In re Medallion Realty Trust*, 103 B.R. 8, 11 (Bankr. D. Mass. 1989), which held that the *Treasure Island*'s business-purpose vs. protection-of-trust-res-purpose dichotomy "points in the right direction" but was impractical, and instead adopted a slightly different test. Brady's daughters argue, then, that by citing these cases, we were telling the bankruptcy court that the "primary purpose" test was not controlling, and the bankruptcy court was thus free to consider more formalistic definitions of "business trust" that require such a trust to be evidenced by transferable certificates of ownership. *See* KY. REV. STAT. ANN. §§ 386.370, 386.400 (requiring a trust to offer transferable certificates to qualify as a business trust); *Morrissey*, 296 U.S. at 359 (requiring transferable certificates of ownership for a trust to qualify as an "association" and thus be treated as a corporation under the Internal Revenue Code).

We are not persuaded. Our earlier opinion set out the controlling legal standard explicitly, and that standard was the "primary purpose" test, without a requirement for transferable certificates of ownership: the opinion cited the *Treasure Island* "primary purpose" test favorably, and at length; it adopted a holding that was a version of that test; and its three-part instruction for what the bankruptcy court's findings of

fact should establish was designed to discern the primary purpose of the Trust. That holding established the law of the case, and the bankruptcy court and district court had no discretion to choose another standard.

Though the *Medallion Realty Trust* case our earlier opinion cited did reject *Treasure Island*'s business-purpose vs. protection-of-trust-res purpose dichotomy, *Medallion Realty Trust* nevertheless adopted another part of *Treasure Island*'s holding—*Treasure Island*'s statement that "business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit," 2 B.R. at 334—when it held that the decisive question is "whether the trust was created to transact business for the benefit of investors." *Medallion Realty Trust*, 103 B.R. at 11. And our opinion incorporated this language from *Medallion Realty Trust* into our own definition when we omitted *Treasure Island*'s words "for profit" and held that "trusts created with the primary purpose of *transacting business* or carrying on commercial activity *for the benefit of investors* qualify as business trusts[.]" *Brady*, 1997 WL 415318, at *4 (emphasis added). Hence it was no anomaly that we cited to *Medallion Realty Trust*, and the fact that the latter case questions part of *Treasure Island*'s holding hardly indicates that we were equivocating and the bankruptcy court therefore had free rein to choose its own standard of law. We plainly stated the law we were adopting, and all three of the cases we cited unequivocally reject the proposition Brady's daughters wanted the bankruptcy court to accept—that for a trust to qualify as a "business trust" it must have transferable certificates of ownership.

### B.  *Whether an Exception to the Law of the Case Exists Here*

Our finding that our earlier *Brady* opinion established the law of the case does not necessarily end the matter, since the doctrine is discretionary: "'law of the case,' as applied to the effect of previous orders on the later action of the court rendering them in the same case, merely expresses the